*29 OPINION OF THE COURT
Bruce M. Kaplan, J.
Rose V., the paternal grandmother of Ricky P., also known as Felix Ricky L., has moved to intervene in this child protective proceeding. It affords the court, in a case of apparent first impression, an opportunity to construe Family Court Act § 1035 (e), added by Laws of 1986 (ch 699, eff Aug. 30, 1986).
Family Court Act § 1035 (e) provides: "The child’s adult sibling, grandparent, aunt or uncle not named as respondent in the petition, may, upon consent of the child’s parent appearing in the proceeding, or where such parent has not appeared then without such consent, move to intervene in the proceeding as an interested party intervenor for the purpose of seeking temporary or permanent custody of the child, and upon the granting of such motion shall be permitted to participate in all hearings concerning the temporary and permanent placement of the child. Such motions for intervention shall be liberally granted.”
In order to decide this motion, the court must answer the following questions:
1. Must Ms. V. obtain the consent of Ricky P.’s parents before she can move to intervene?
2. Has the requisite consent been obtained?
3. In the event that consent was obtained, or ruled unnecessary, should intervention be granted on the merits?
The court holds that Ms. V. must obtain the consent of Ms. P. before she can move to intervene, that she failed to obtain such consent, and that if the motion were considered on the merits leave to intervene would be denied.
MS. V. MUST OBTAIN THE CONSENT OF MS. P.
BEFORE SHE CAN MOVE TO INTERVENE
Before Ms. V. can move to intervene she must obtain the consent of Deborah P. because she is a "parent appearing in the proceeding” whose consent is required. Conversely, the consent of her son Felix L., Ricky’s father, is not required because he is not a respondent in this matter.
The sponsor’s memorandum in support of the law indicated its purpose was to give close relatives of the child the right to intervene under certain circumstances in order to seek to assume care of the child ensuring that "close relatives will be utilized more often as alternative custodians rather than *30 foster care placement with a stranger and statistics [sic] the preference for keeping a child within his or her family.” The "certain circumstances”, unspecified in the sponsor’s memorandum, is the consent of a respondent parent or parents.
The reason for the necessity of this consent is simple. Frequently a child who has been subjected to abusive or neglectful behavior is reluctant to be separated from the familiar setting of his or her home. In the event that a familial resource comes forward the child can remain in known and nonthreatening surroundings in the company of persons whom he or she knows. This eases the distress of separation from a parent, even one who has abused or neglected that child.
In addition when a child is placed in foster care, visitation between the respondent parent and the child is normally limited to weekly or biweekly visitation at the offices of the agency responsible for supervising the foster parents. In this artificial environment it is hard to maintain an ambiance of closeness and intimacy.
In contrast, visitation arrangements for a child placed in a kinship foster home can be more flexible and extensive, and take place in a far more normal surrounding than the unnatural one that agency office visits provide.
Since a purpose of encouraging placement with a close relative is to provide a setting that is both comforting to the child, and conducive to a warm and unconstrained visitation, it is essential that there be a good relationship between the parent and the relative in whose home the child is placed. In the event where there is antagonism between respondent and the proposed intervenor, visitation would necessarily occur in an atmosphere of mistrust, hostility and antipathy which certainly is not good for the child. It is likely that sensitivity to this concern prompted the incorporation of the consent precondition into the statute.
This conclusion is supported by case law which enjoins visitation in the home of a custodial parent or other custodian where the relationship between the custodian and noncustodial parent is so hostile, or volatile that it would be unreasonable to expect that there could be meaningful visitation within the home. (Matter of Seneca v Seneca, 94 Misc 2d 418 [Fam Ct, Rockland County 1978].)
In Sturm v Lyding (96 AD2d 731 [4th Dept 1983]) visitation was ordered to be held in a neutral setting where hostility *31 existed between the maternal grandmother, who had custody, and the father. In Parker v Ford (89 AD2d 806 [4th Dept 1982]) it was noted that, where animosity existed between a father seeking visitation and the custodial maternal grandmother, supervised visitation at her home would be unworkable.
Indeed it is basic to our jurisprudence that visitation between a parent and a child is a matter of benefit to both the parent and the child, and should be enjoined only where there was a clear showing that visitation would be harmful to the child’s best interests. (Daghir v Daghir, 82 AD2d 191 [2d Dept 1981], affd 56 NY2d 938; Hotze v Hotze, 57 AD2d 85 [4th Dept 1977].)
It is for these reasons that the Legislature mandated obtaining the approval of a respondent parent as a prerequisite for seeking leave to intervene.
Although the consent of a respondent parent is necessary in order to seek leave to intervene this requirement does not work to give the respondent parent a veto power over interested relatives being considered as alternative caretakers for the children.
These familial resources may come forward and offer themselves, or be proposed by SSC or the Law Guardian for approval by the court. While such persons would lack intervenor status, they certainly have the same opportunity to be evaluated as to their ability to provide care for the child or children. The wishes of the respondent parent regarding placement of the child(ren) with such a relative would be only one of many factors considered in determining the appropriateness of placing the child or children with the relatives.
The fact that the consent precondition under section 1035 (e) neither literally nor effectively affords a respondent parent a veto power over prospective family resources is pivotal to this court’s finding that such precondition is mandatory before a relative can move to intervene.
MS. V. FAILED TO OBTAIN MS. P.’S CONSENT TO INTERVENE
Ms. V. has failed to submit any proof that she obtained Deborah P.’s consent, nor given the antagonistic relationship that exists between them is such consent likely to be forthcoming.
Since 1982 Ms. V. and Ms. P. have been adversaries in *32 litigation over Ricky, and each time Ms. V. has been unsuccessful, and as a result of the proceeding brought by Ms. P. in March of 1984 a final order of protection was entered enjoining Ms. V. from interfering with her custody of Ricky.
Indeed as recently as March 12, 1986 Judge Schechter issued a final order of protection enjoining Ms. V. from, inter alla, interfering with Deborah P.’s custody of Ricky.
THE MOTION TO INTERVENE SHOULD BE DENIED ON THE MERITS
Family Court Act § 1035 (e) provides for intervention for the limited purpose of seeking temporary or permanent custody of a child alleged to be neglected. It is a statute which delineates intervention in child protective proceedings, rendering inapplicable CPLR 1013 which controls permissive intervention generally (Matter of Holmes, 134 Misc 2d 278 [Fam Ct, Kings County 1986]). The court nevertheless will utilize it as a frame of reference.
Since the sole purpose of permitting intervention would be for Ms. V. to seek custody, it would be senseless to grant leave to intervene when it is inconceivable that her application would be favorably considered.
Ms. V. is no stranger to this court. Her protracted involvement in custody and family offense proceedings has resulted in determinations that show her to be unworthy of trust, and an unsuitable custodial resource.
When the Legislature created a class of relatives who could move to intervene, it did not intend to allow relatives who had previously litigated custody to relitigate that issue based solely on the fact that a neglect proceeding had been brought subsequently against the custodial parent.
The drafters intended that a family member acceptable to the respondent parent could come forward as a potential custodian. The court must then make an informed judgment about a prospective intervener’s ability "to assume care of the child”, based on available information about him or her. In this case the court has been guided by records of Family Court proceedings, of which the court has taken judicial notice. (5 Weinstein-Korn-Miller, NY Civ Prac 4511.01.) They strongly militate against granting intervention.
The single most glaring incident that this court takes cognizance of is Ms. V.’s violation of the custody order in docket No. V 3512/82. Ms. V., the respondent in that action, was *33 fully aware that Ms. P. had received a final order of custody, and that her own temporary visitation rights had been terminated by the Hon. Leah Marks, Family Court Judge, on October 19, 1983. Yet, on March 9, 1984, Deborah P., under docket No. V 999/84, filed a petition for a writ of habeas corpus against Ms. V. alleging that both Ms. V. and her son, Felix L., were wrongfully withholding from Ms. P. the custody of her son.
During the course of this proceeding Mr. L. was cited for contempt by the Hon. Elrich A. Eastman, and jailed for failure to produce the child in court as directed. It appeared that during this period the child was in the physical custody of Ms. V.
After a return of the child was secured final orders of protection were issued in favor of Ms. P. against both Ms. V. and Mr. L.
Subsequently, Ms. P. sought protection by supplemental petition on docket No. V 3515/82 alleging that Ms. V. continuously harassed her through groundless complaints to SSC and by impersonation of child protective officials in an attempt to obtain custody of the child Ricky P. This resulted in the Hon. Sara Schechter, Family Court Judge, issuing a final order of protection against Ms. V. on March 12, 1986. Additionally, Judge Schechter barred Ms. V. from filing any custody petitions without her prior permission.
If Ms. V. were permitted to intervene it would unduly delay the proceedings. She has continued to burden this court with ex parte communications notwithstanding the most pointed admonitions in open court as to the impropriety of her actions, and has repeatedly abused the process of this court.
The conduct and actions of movant, along with this history of prior litigation involving her, much of which involves those same issues which would be before the court if the motion to intervene was granted, necessitates that this court deny leave to intervene notwithstanding the statute’s provision that these motions be liberally granted.