OPINION OF THE COURT
Lee H. Elkins, J.
This is a proceeding for custody of a child in foster care, brought by the child’s maternal grandmother who also is the child’s foster mother. The Administration for Children’s Services supports the petition. The mother of the child, with the support of the Law Guardian, argues that the petitioner lacks standing to seek permanent custody of a child who has been placed, under article 10 of the Family Court Act, in the temporary custody of the Administration for Children’s Services. The petitioner argues that the child’s need for permanency, and the policy reflected in recent amendments to the Family Court Act and Social Services Law intended to expedite the formulation of a permanency plan for the child, should confer standing on such a relative to seek custody of a child in foster care. Amendments to the Family Court Act, Social Services Law and Domestic Relations Law {see, L 1999, ch 7), to conform with the Federal Adoption and Safe Families Act of 1997 (Pub L 105-89, 111 US Stat 2115 [1997] [ASFA]), create a new proceeding, which the statute terms the permanency hearing. The petitioner notes that under the amended statutes, one of the dispositions following a permanency hearing is permanent placement with a fit and willing relative. (Family Ct Act § 1055 [b] [iv] [B] [5] [iv].) The petitioner contends that these amendments confer standing upon relatives to seek permanent custody of a child in foster care, independently of the common-law extraordinary circumstances analysis articulated in Matter of Bennett v Jeffreys (40 NY2d 543 [1976]). As noted previously, the Administration for Children’s Services also argues that the petitioner be granted standing to seek permanent custody of the child.
An order of this court placed the subject child in kinship foster care under Family Court Act § 1055 (a), upon a finding that the respondent mother neglected the child. The subject child initially was paroled to the petitioner grandmother in February 1998, pending trial of Family Court Act article 10 proceeding. The court subsequently found that the respondent mother neglected the child by failing to protect him from acts of violence perpetrated by her paramour, which resulted in the *459 child’s arm being fractured. Although the petitioner argued that the court should place the child directly in her custody as a relative, under Family Court Act § 1055 (a), the court placed the child in the custody of the Administration for Children’s Services, to reside with the petitioner for a period of 12 months. This order was effective September 15, 1998.
The disposition of matters relating to children placed into foster care under article 10 of the Family Court Act is governed by a detailed statutory scheme. This statute, which applies to all aspects of the process, supersedes any other statute or common-law principles of general applicability. (See, Matter of Sierra H., 138 Misc 2d 908 [Fam Ct, Broome County 1988]; and see, Matter of Michael B., 80 NY2d 299, 310 [1992].) Therefore, in determining the petition for custody, the court must refer to the statutes which specifically authorized the State to remove the child from the mother’s custody and which delimit the authority of the State to continue as custodian of the child. (Supra.) A foster parent does not have standing to seek custody of a child in temporary foster care. (Matter of Michael B., 80 NY2d 299, supra.) Under the specific terms of article 10 of the Family Court Act, this principle applies equally to kinship foster parents, where a parent appears in the proceeding and objects to the relative’s intervention. Family Court Act § 1035 (f) authorizes the “child’s adult sibling, grandparent, aunt or uncle not named as respondent in the petition” to move to intervene as an interested party intervenor in the proceeding for the purpose of seeking temporary or permanent custody of the child, only upon consent of the child’s parent appearing in the child protective proceeding, or where the parent fails to appear. The statute permits the intervenor relative, with the parent’s consent, to participate in the dispositional phase of the child protective proceeding. Accordingly, where the parent consents, a relative in the required relation to the child may obtain permanent custody, according to the court’s determination of the best interests of the child. (See, e.g., Matter of Wayne M. v Francis N., 154 AD2d 837 [3d Dept 1989].)
However, where the parent, appearing in the child protective proceeding, does not consent to the child being placed permanently in the custody of a relative, no other provision of article 10 of the Family Court Act, as it existed prior to the 1999 amendments, gives a relative the right to intervene in the child protective proceeding to obtain permanent custody of the child. (See, e.g., Matter of Sierra H., 138 Misc 2d 908, supra.) *460 Rather, the dispositional options available to the court upon a finding of neglect or abuse are limited to the five specified in Family Court Act § 1052 (a). These five dispositional alternatives are: (1) suspending judgment in accordance with Family Court Act § 1053; (2) releasing the child to the custody of the parent or other person legally responsible in accord with Family Court Act § 1054; (3) placing the child, in accordance with Family Court Act § 1055, with, inter alla, a relative or other suitable person for a one-year period; (4) making an order of protection under Family Court Act § 1056; or (5) placing the respondent under supervision in accordance with Family Court Act § 1057.
As noted by one appellate court, where a child had been placed with the Commissioner to reside in kinship foster care:
“The first, fourth and fifth alternatives are, on their face, inapplicable since a suspended judgment, order of protection or placement under supervision are not involved. The second alternative, release to the custody of a parent or ‘other person legally responsible’ in accord with Family Court Act § 1054, is also inapplicable. Pursuant to section 1054, a person ‘legally responsible’ is one who had legal responsibility for the child ‘at the time of the filing of the petition.’ At the time of the filing of the * * * petitions, the Commissioner had legal custody of the children. {See, Family Ct Act § 1017 [2] [a] [ii]; 18 NYCRR 443.1 [d].) Thus, section 1052 (a) (ii)’s use of the term ‘person legally responsible’ refers to the Commissioner, not to a kinship foster parent who had been approved by the Commissioner.
“While the third alternative of Family Court Act § 1052 (a) authorizes placement with ‘a relative or other suitable person’, such placement is limited to an initial period of one year, as are extensions of placement (Family Ct Act § 1055 [b] [i]), which, as already noted, require a hearing to consider, inter alla, the child’s best interests and the respondent’s compliance with the child services plan (Family Ct Act § 1055 [b] [iv] [A] [3]; [B]). Nothing in Family Court Act § 1055 authorizes the discharge of a child to a relative for an indefinite period of time” (Matter of H./M. Children, 217 AD2d 164, 169-170 [1st Dept 1995]; see also, Matter of Williams v Glass, 245 AD2d 66 [1st Dept 1997]).
*461 Prior to the 1999 amendments, the only statutorily authorized means[1] to obtain permanent custody of a child in foster care, without consent of the child’s parents, was to seek adoption following termination of parental rights. Pursuant to Family Court Act § 1055 (d), the court is authorized to direct the child protective agency to file a petition “to legally free the child for adoption.” A foster parent is statutorily authorized to seek permanent custody of a child in foster care only when the legal right of the parents to custody and guardianship of the child have been terminated upon clear and convincing evidence of abandonment, permanent neglect, mental illness or retardation or severe or repeated abuse. (Matter of Michael B., supra, 80 NY2d, at 310.) As noted in Michael B.: “Because of the statutory emphasis on the biological family as best serving a child’s long-range needs, the legal rights of foster parents are necessarily limited (see, Smith v Organization of Foster Families, 431 US 816, 846). Legal custody of a child in foster care remains with the agency that places the child, not with the foster parents (Social Services Law § 383 [2]). Foster parents enter into this arrangement with the express understanding that the placement is temporary, and that the agency retains the right to remove the child upon notice at any time (People ex rel. Ninesling v Nassau County Dept. of Social Servs., 46 NY2d 382, 387, rearg denied 46 NY2d 836). As made clear in Matter of Spence-Chapin Adoption Serv. v Polk (29 NY2d 196), ‘foster care custodians must deliver on demand not 16 out of 17 times, but every time, or the usefulness of foster care assignments is destroyed. To the ordinary fears in placing a child in foster care should not be added the concern that the better the foster care custodians the greater the risk that they will assert, out of love and affection grown too deep, an inchoate right to adopt.’ (Id., at 205.) Foster parents, moreover, have an affirmative obligation — similar to the obligation of the State — to attempt to solidify the relationship between biological parent and child. While foster parents may be heard on custody issues (see, Social Services Law § 383 [3]), they have no standing to seek permanent custody absent termination of parental rights (see, Matter of Rivers v Womack, 178 AD2d 532).” (80 NY2d, at 309-310.)
Prior to the recent amendments, nothing in article 10 of the Family Court Act indicated that a kinship foster parent who *462 seeks custody over the objection of the parent should be treated differently from a nonkinship foster parent. Applying the reasoning of Michael B. (supra), courts have refused to entertain petitions by relatives for permanent custody of children in foster care, where parental rights have not been terminated. (See, e.g., Matter of New York City Dept. of Social Servs. [Tahira L.], 203 AD2d 575 [2d Dept 1994], lv denied 84 NY2d 804.) Where the parent withholds consent, the court may only place the subject child temporarily in the custody of a relative. (See, e.g., Matter of Ricky P., 135 Misc 2d 28 [Fam Ct, NY County 1987].) Even where there has been a termination of parental rights the appropriate means for a relative to obtain permanent custody of the child has been to file a petition for adoption. (Social Services Law § 384-b [10]; see, e.g., Matter of Peter L., 59 NY2d 513 [1983]; Matter of Mary Liza J., 198 AD2d 350 [2d Dept 1993]; Matter of Rockland County Dept. of Social Servs. [Charles H.], 207 AD2d 788 [2d Dept 1994].)
The issue raised by the petitioner and the Administration for Children’s Services is whether the 1999 amendments have altered these statutory principles.
A new provision has been added to Family Court Act § 1055. (L 1999, ch 7, § 50.) Under the new amendments, within 12 months of placement of any child in foster care, the court must conduct a hearing to determine a permanency plan for the child. (Family Ct Act § 1055 [b] [ii].) The initial permanency hearing must occur within 12 months of the earlier of two placement events: the finding of neglect or abuse under Family Court Act § 1051; or the 60th day after the date the child was removed from his or her home. (Family Ct Act § 1055 [b] [i], [ii].) In the latter case, the initial permanency hearing must occur when the child has been in foster care for 14 months (60 days + 12 months). At the permanency hearing, the court must determine, among other issues, whether or when the child: (i) will be returned to the parent; (ii) should be placed for adoption with the social services official filing a petition for termination of parental rights; (iii) should be referred for legal guardianship; (iv) should be placed permanently with a fit and willing relative', or (v) should be placed in another permanent living arrangement if the social services official has documented to the court a compelling reason for determining that one of the other four dispositions would not be in the best interest of the child. (Family Ct Act § 1055 [b] [iv] [B] [5].)
It appears, therefore, that under the amended statute, in the context of a permanency hearing conducted within 12 months *463 of the placement event, the court may place the child out of temporary foster care and into the permanent custody of a fit and willing relative. The statute is silent as to whether such placement with a relative must be according to the other provisions of article 10 in existence prior to the 1999 amendments.
The court notes that none of the relevant portions of the previously cited statutory provisions has been altered by the ASFA amendments. Family Court Act § 1035 (f) continues to limit the intervention of “[t]he child’s adult sibling, grandparent, aunt or uncle not named as respondent in the petition” for the purpose of seeking temporary or permanent custody of the child, to require the consent of the child’s parent appearing in the proceeding. The statute continues to limit placement with the Commissioner of Social Services or directly in the custody of a relative under Family Court Act § 1055 (a), and any extension of such placement, to a period of one year. (Family Ct Act § 1055 [b] [i].)
Under the statutory scheme, the permanency hearing is scheduled independently of the fact-finding and dispositional hearings.[2] Therefore, the permanency hearing cannot be construed simply as a process for enlarging the dispositional alternatives following a finding of abuse or neglect. Significantly to the determination of the present petition, the permanency hearing is not contingent upon any finding of parental unfitness or persistent neglect. Obviously, the child may not be placed out of the parent’s custody and into the permanent custody of a relative without such a finding. (Cf., e.g., Matter of Bennett v Jeffreys, supra, 40 NY2d, at 549.) Certainly, the permanency hearing is not intended as a substitute for previously enacted procedures to determine the child’s need for protection and an appropriate disposition upon a finding of abuse or neglect under Family Court Act article 10. (See, e.g., Matter of Marie B., 62 NY2d 352 [1984] [statute equating violation of a prefinding adjournment in contemplation of dismissal with a finding of neglect was unconstitutional].) Rather, the court must adopt a plan for the permanency of the child, which may be contingent upon the outcome of the child protective proceeding. The purpose of the permanency hearing is to establish the goal under which the agency must operate in providing services to the child, parents and other interested persons pursu-
*464 ant to Social Services Law § 409-e (Family Ct Act § 1055 [b] [iv] [A] [2]); to determine whether the goal set initially continues to be appropriate under the current circumstances (Family Ct Act § 1055 [b] [iv] [A] [1]); and to determine whether the agency and the respondent have complied with the service plan. (Family Ct Act § 1055 [b] [iv] [A] [3].) The scheduling of the permanency hearing is intended to expedite the process of placing the child in the setting in which the child may be expected to remain indefinitely. The plan may or may not contemplate the immediate return of the child to the parent. The plan may contemplate the eventual return of the child to the parent, upon conditions which assure the child’s safety (Family Ct Act § 1055 [b] [iv] [B] [2], [4]), or may contemplate the eventual termination of parental rights, where grounds for termination appear otherwise to exist. (Family Ct Act § 1055 [b] [iv] [B] [4].) The court even may approve a concurrent plan, which sets forth alternative permanency goals of return to the parent or of adoption, depending upon the respondent’s compliance with the service plan. (See, e.g., Matter of Maryann Ellen F., 154 AD2d 167, 169 [4th Dept 1990], appeal dismissed 76 NY2d 773; Matter of Rita VV., 209 AD2d 866 [3d Dept 1994] [approving concurrent planning].) In any event, the statute requires that the court find, in the same order which establishes the permanency plan, that reasonable efforts are being made to implement the plan. (Family Ct Act § 1055 [b] [iv] [B] [4].) It follows that the primary purpose of the permanency hearing is not to adjudicate the rights of the parent to continued custody of the child.
The amendments to the existing statute do not appear to have altered the role of the foster parent, whether kinship or nonkinship, or of the relative with whom a child has been placed directly pursuant to Family Court Act § 1055 (a). The statute continues[3] to confer upon “the person, agency or institution with whom the child was placed,” as well as upon the child, Law Guardian or the foster parent in whose home the child resides, the right to petition for a permanency hearing. (Family Ct Act § 1055 [b] [ii].) A new provision requires that the foster parent caring for the child or any relative providing care for the child be provided with notice of and an opportunity to be heard at the permanency hearing. (Family Ct Act § 1040.) *465 The statute specifically provides that no such foster parent or relative shall be construed to be a party to the hearing[4] solely on the basis of such notice and opportunity to be heard, and that the absence of such person from the hearing shall not be grounds for a continuance or to invalidate any order issued after the hearing. (Family Ct Act § 1040.)
In Michael B., the Court of Appeals determined, “[Hooking to the child’s rights as well as the parents’ rights to bring up their own children, [that] the Legislature, has found and declared that a child’s need to grow up with a ‘normal family life in a permanent home’ is ordinarily best met in the child’s ‘natural home’ (Social Services Law § 384-b [1] [a] [i], [ii]).” (Matter of Michael B., supra, 80 NY2d, at 309.) These legislative findings were unaffected by the 1999 amendment to Social Services Law § 384-b (1) (a). Rather, in amending that section the Legislature added the qualifier that “the health and safety of children is of paramount importance.” (Social Services Law § 384-b [1] [a].) Accordingly, the Legislature decreed that the general desirability of returning a child to the natural parent must be “consistent with the health and safety of the child” (Social Services Law § 384-b [1] [a]). Legislative history indicates that this language does not represent a change in law;, policy or emphasis in New York. Rather, the new statute has been described as “merely an attempt to refine the law concerning permanency planning for children in foster care so that New York law more fully and expeditiously accomplishes its preexisting goals. The new statute neither creates new rights nor abrogates preexisting ones, vested or otherwise.” (Matter of Marino S., 181 Misc 2d 264, 273 [Fam Ct, NY County 1999].)
Therefore, the court does not find that the Legislature intended the permanency hearing to be a forum for a petition by a relative caring for a child in temporary foster care to obtain permanent custody of the child, in the ordinary case. In the court’s view, the significance of the new statutory option of placing a child in the permanent custody of a fit and willing relative, following a permanency hearing held under article 10 of the Family Court Act, is to be found in the 1999 amendments to Social Services Law § 384-b. (L 1999, ch 7, § 10.)
Under the amended statute, if the child remains in foster care for 15 of 22 months from the placement event “the authorized agency having care of the child shall file a petition [to *466 terminate parental rights pursuant to Social Services Law § 384-b] unless [inter alla]:[5] (A) the child is being cared for by a relative or relatives” (Social Services Law § 384-b [3] [Z] [i] [A] [emphasis added]). By placing the child in the care of relatives, a petition for termination of parental rights may be avoided. Consequently, under narrow circumstances in which the relationship of the child to his or her extended family otherwise may be severed by a proceeding to terminate the parents’ rights to custody and guardianship of the child, the amendment to Family Court Act § 1055 (b) apparently permits relatives of the child to intervene in the permanency hearing to obtain permanent custody.
This interpretation of the amendment to Family Court Act § 1055 (b) is not inconsistent with the general statutory scheme of article 10. Permanent placement with relatives as an alternative to filing a termination of parental rights petition may be done consistently with Family Court Act § 1035 (f) by obtaining the consent of the parent whose rights otherwise may be terminated.[6] Alternatively, a relative may intervene to seek permanent custody of the child if the parents have not appeared in the child protective proceeding. (Family Ct Act § 1035 [f].) Even where the parent objects to the permanent transfer of custody, this narrow construction is consistent with established common-law principles. According to existing precedent, although not within the context of proceedings under article 10 of the Family Court Act (see, e.g., Matter of New York City Dept. of Social Servs. [Tahira L.], 203 AD2d 575, supra-, cf., e.g., Matter of Whalen v Commissioner of Fulton County Dept. of Social Servs., 152 Misc 2d 251 [Fam Ct, Fulton County 1991]), a hearing is appropriate upon the petition of a relative for permanent custody of a child under circumstances where the rights of the child’s parents to custody and guardianship otherwise might be terminated.
*467 Generally, a finding of neglect pursuant to article 10 of the Family Court Act does not amount to the extraordinary circumstances necessary to establish a nonparent’s standing to seek permanent custody of the respondent parent’s child. (See, e.g., Matter of Bisignano v Walz, 164 AD2d 317 [3d Dept 1990]; Matter of New York City Dept. of Social Servs. [Tahira L.], 203 AD2d 575, supra, and see, Matter of Alfredo S. v Nassau County Dept. of Social Servs., 172 AD2d 528, 532-533 [2d Dept 1991].) In Matter of Dickson v Lascaris (53 NY2d 204, 209 [1981]), where a father filed a petition to regain custody of his child from a nonrelative, the Court of Appeals held that it “was error * * * to have concluded, in the absence of an abandonment as defined by statute, that petitioner abandoned his child” , (emphasis added). The Court held that “[t]he definition of abandonment for determining whether an extraordinary circumstance is present within the meaning of Bennett v Jeffreys (supra) simply does not differ from the classic abandonment principle” (Matter of Dickson v Lascaris, supra, at 209). In Matter of Bisignano v Walz (164 AD2d 317 [3d Dept 1990]) the Appellate Division, Third Department, interpreted Matter of Dickson to require that proof of extraordinary circumstances based upon persisting parental neglect or unfitness sufficient to permit a nonparent to seek custody of a child (Matter of Bennett v Jeffreys, supra, 40 NY2d, at 544) meets the standard of permanent neglect set forth in Social Services Law § 384-b. The Appellate Division, Second Department, has agreed implicitly, by requiring nonparents who seek standing to obtain custody of a child to meet a higher degree of proof of a parent’s neglect under common-law principles than would be required to meet the standard of proof of neglect under Family Court Act article 10. (Matter of Alfredo S. v Nassau County Dept. of Social Servs., 172 AD2d 528, 532-533 [2d Dept 1991], appeal dismissed 78 NY2d 899.) The Second Department also has relied upon the Third Department’s decision in Matter of Bisignano v Walz in dismissing a relative’s petition for custody of a child, in the absence of sufficient evidence of parental unfitness (see, e.g., Matter of Ellen K. v John K., 186 AD2d 656, 658 [2d Dept 1992]; Matter of Garcia v Garcia, 183 AD2d 826 [2d Dept 1992]), and in sustaining transfers of custody from a parent to a relative on such grounds as the parent’s mental illness. (See, e.g., Matter of Nellie R. v Betty S., 187 AD2d 597 [2d Dept 1992].)
Section 1035 (f) of the Family Court Act merely codifies this common-law principle in part by stating that a relative does *468 not have the right to intervene in a child protective proceeding to obtain permanent custody of the subject child at disposition, following a finding of neglect. However, the amended Family Court Act § 1055 (b) (iv) (B) (5) (iv) now apparently incorporates the entire common-law principle into the statute, by permitting a fit and willing relative to petition for permanent custody as an alternative to the termination of parental rights, where the relative can demonstrate circumstances such as would support a petition to terminate parental rights. Under such circumstances, the court should entertain the relative’s petition for permanent custody of the child, in the context of the permanency hearing. This interpretation of the amendment is consistent with the legislative purpose “merely * * * to refine the law concerning permanency planning for children in foster _ care * * * [by legislation which] neither creates new rights nor abrogates preexisting ones, vested or otherwise.” (Matter of Marino S., supra, 181 Misc 2d, at 273 [Fam Ct, NY County 1999].)
This interpretation also is consistent with previous judicial construction of Social Services Law § 392, which is similar to the new permanency hearing statute. Section 392 of the Social Services Law was enacted in 1971 to require periodic review of the status of children placed into foster care by means other than a Family Court proceeding. (Social Services Law § 392 [1] [b].) The purpose of the enactment was to ensure early permanency for those children. The Court of Appeals described the purpose of the foster care review provisions of Social Services Law § 392 as follows: “Fundamental also to the statutory scheme is the preference for providing children with stable, permanent homes as early as possible (see, Matter of Peter L., 59 NY2d 513, 519). ‘[W]hen it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought’ (Social Services Law § 384-b [1] [a] [iv]). Extended foster care is not in the child’s best interest, because it deprives a child of a permanent, nurturing family relationship (see, Matter of Gregory B., 74 NY2d 77, 90, rearg denied sub nom. Matter of Willie John B., 74 NY2d 880; Matter of Joyce T., 65 NY2d 39, 47-48).” (Matter of Michael B., supra, 80 NY2d, at 310.)
Section 392 of the Social Services Law was amended in 1989 (L 1989, ch 744, § 3) to authorize the court to direct that the child be placed in the custody of a relative. (Social Services Law § 392 [6] [b].) This amendment is strikingly similar to the *469 newly amended Family Court Act § 1055 (b). Under the amended section 392, a kinship foster parent does not stand in the same relation to the child as any other foster parent. This distinction was recognized explicitly by the Court of Appeals in Michael B., where the Court stated:
“As set forth above, there are three possible dispositions after foster care review with respect to a child not freed for adoption: continued foster care; release to a parent, guardian, relative or other suitable person; and institution of parental termination proceedings (Social Services Law § 392 [6] [a]-[c]).
“As the first dispositional option, paragraph (a) contemplates the continuation of foster care, with the child remaining in the custody of the authorized agency, and the arrangement remaining subject to periodic review * * * Under the statutory scheme, however, foster care is temporary, contractual and supervised.
“Paragraph (b), by contrast, contemplates removal of the child from the foster care system by return to ‘the parent, guardian or relative, or direction] that the child be placed in the custody of a relative or other suitable person or persons.’ The 1989 statutory revision added as a permissible disposition the placement of children with relatives or other suitable persons. The purpose of this amendment was to promote family stability by allowing placement with relatives, extended family members or persons like them, as an alternative to foster care (see, Sponsor’s Mem in Support of Amended Bill, L 1989, ch 744, and 10 Day Bill Budget Report, A 7216-A, Governor’s Bill Jacket; see also, Matter of Peter L., 59 NY2d, at 519, supra).
“Plainly, the scheme does not envision also including the [unrelated] foster parents” (Matter of Michael B., supra, at 316).
In this court’s view, the purpose of the 1999 amendment to Family Court Act § 1055 (b), to permit the placement of a child out of foster care and permanently in the care of a fit and willing relative, also “was to promote family stability by allowing placement with relatives * * * as an alternative to foster care” (Matter of Michael B., supra, at 316). However, under the statutory scheme adopted, the court finds for the reasons previously stated that such petitions are limited to circumstances in which the parents’ right to custody and guardianship of the child otherwise may be terminated.
The present petition for custody must be dismissed as unauthorized by the statute under which the child was placed in *470 foster care. Moreover, the petition should be dismissed even were the court to consider it a petition for a permanency hearing (Family Ct Act § 1055 [b] [ii]) brought by a “fit and willing” kinship foster parent to obtain permanent custody of the child under Family Court Act § 1055 (b) (iv) (B) (5) (iv). The petition fails to allege facts sufficient to establish standing to seek permanent custody of the child placed in the petitioner’s care by the Commissioner of the Administration for Children’s Services. The basis for the grandmother’s petition for permanent custody of the child is that there has been a finding of neglect against the mother, who is alleged to have continued her relationship with the child’s abuser. The child has not remained in the petitioner’s care for the 15-month period sufficient to give rise to a petition to terminate the respondent’s parental rights, under the amended statutes. (Social Services Law § 384-b [3] [Z] [i] [A].) Nor, in any event, has the petitioner alleged facts which would give rise to a cause of action for permanent neglect.

. Although Family Court Act § 1062 permits “[a]ny interested person acting on behalf of a child” placed under section 1055 to petition the court for an order terminating placement, the court may only discharge the child from custody in accord with Family Court Act § 1054. (Family Ct Act § 1065 [b].)

. The determination to be made in the permanency hearing conceivably might occur even prior to any finding against the respondent parent, where the finding is not made within 14 months of the child’s removal from the home.

. Under the statute in existence prior to the 1999 amendments, the person or agency with whom the child was placed, or the child, Law Guardian or foster parent could petition for a hearing on the extension of placement.

. Cf., e.g., Family Ct Act § 1055 (b) (iii).

. The statute also exempts an agency from filing a petition to terminate parental rights where there is a documented “compelling reason for determining that the filing of a petition would not be in the best interest of the child” (Social Services Law § 384-b [3] [Z] [i] [B]) or where the agency has not provided the parents with such services “as it deems necessary for the safe return of the child” to the parents, unless such services are not legally required. (Social Services Law § 384-b [3] [Z] [i] [C].) A “compelling reason” includes that “there are insufficient grounds for filing a petition to terminate parental rights” (Social Services Law § 384-b [3] [Z] [ii] [D]).

. However, the pendency of a disposition under article 10 establishes a compelling reason to exempt the agency from filing a petition to terminate parental rights, even though the child has been in foster care for 15 consecutive months. (Social Services Law § 384-b [3] [Z] [ii] [E].)