[824 NYS2d 232]

In the Matter of Tristram K., an Infant. Jing K., Appellant; Administration for Children's Services, Respondent, and Douglas K. et al., Intervenors-Respondents.

First Department, November 2, 2006

### APPEARANCES OF COUNSEL

*Sanctuary for Families' Center for Battered Women's Legal Services*, New York City (*Mary Rothwell Davis* of counsel), for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Jane L. Gordon* and *Edward F.X. Hart* of counsel), for Administration for Children's Services, respondent.

*Philip Schiff*, New York City, for Douglas K. and another, respondents.

*Tamara A. Steckler, The Legal Aid Society*, New York City (*Judith Stern* and *Rebecca Rubloff* of counsel), *Law Guardian*.

### OPINION OF THE COURT

GONZALEZ, J.

On this appeal, we must decide whether Family Court Act § 1035 (f) precludes a child's relatives from intervening in Family Court Act article 10 child protective proceedings, where the only living parent has appeared in the proceeding and refuses to consent to intervention. Based upon the plain meaning of the statutory language, we reverse and find that Family Court erred in permitting intervention by the child's paternal relatives.

This appeal arises out of protracted neglect, custody and visitation proceedings concerning the child Tristram K., now six years old, under articles 6 and 10 of the Family Court Act. The history of these proceedings is set out in detail in our decision in a prior appeal (25 AD3d 222 [2005]), and will not be repeated. Insofar as relevant, this Court vacated orders releasing the child to the custody of a paternal aunt and awarding her permanent custody, and remanded for "an immediate hearing on visitation for the mother and an expedited new dispositional and custody hearing" (*id.* at 229).

Following this Court's November 17, 2005 order, Family Court directed that a hearing on visitation and an expedited dispositional and custody hearing be held on December 29, 2005. Prior to the hearing date, however, Douglas K. and Corinne K. (the K.s), the child's paternal uncle and his wife, with whom the child, without the court's permission, had been living in California, moved for permission to intervene pursuant to Family Court Act § 1035 (f) in order to participate in all hearings and arguments concerning disposition of the matter. The K.s argued that section 1035 (f) permits intervention by designated relatives without parental consent where a parent does not appear, and that the father, who is now deceased, could not "appear" or provide his consent because of his death. They further noted that section 1035 (f) commands that such motions for intervention "shall be liberally granted." The mother opposed the motion, arguing that section 1035 (f), as written, prohibits intervention by relatives where an appearing parent, in this case the mother, does not consent.

Family Court granted the motion to intervene. Although the court acknowledged that the statutory language could be read to prohibit intervention where an appearing parent refuses to consent, it nevertheless found that such refusal only precludes "automatic" standing, and did not affect the court's power to permit intervention on a "discretionary" basis. In reaching this conclusion, the court relied heavily on recent statutory amendments to article 10, the spirit of which, in its view, "give[s] relatives full participatory status." We reverse. Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning (*Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 94). In our view, the plain language of section 1035 (f) compels the conclusion that the designated relatives listed in the statute do not have standing to intervene where an appearing parent refuses to consent. Subdivision (f) provides:

> "The child's adult sibling, grandparent, aunt or uncle not named as respondent in the petition, may, *upon consent of the child's parent appearing in the proceeding, or where such parent has not appeared then without such consent,* move to intervene in the proceeding as an interested party intervenor for the

purpose of seeking temporary or permanent custody of the child, and upon the granting of such motion shall be permitted to participate in all arguments and hearings insofar as they affect the temporary custody of the child during fact-finding proceedings, and in all phases of dispositional proceedings. *Such motions for intervention shall be liberally granted*" (emphasis added).

In the present case, it is undisputed that the mother appeared in the proceeding as a respondent, and that she objects to intervention by the K.s. Accordingly, based on the clear and unambiguous statutory language, the mother's refusal to consent disqualifies the K.s as potential intervenors (*see Matter of Marylou L. v Tenecha L.*, 182 Misc 2d 457, 459 [1999] [no provision in article 10 grants relatives the right to intervene in child protective proceedings where appearing parent does not consent]; *Matter of Ricky P.*, 135 Misc 2d 28, 31 [1987] [precondition of appearing parent's consent is mandatory before a relative can move to intervene]; Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1035, at 82 ["(s)ubsection 1035 (f) allows designated relatives of the child . . . to intervene on the issue of custody, but only if the respondent consents"]).

The K.s' argument that consent was unnecessary because the father "has not appeared" in the proceeding is unavailing. Obviously, the father's appearance was no longer possible after his death in 2002, and his death cannot be equated with a failure to appear so as to trigger the right to intervene without consent. Moreover, even if the father's consent to intervention by his own relatives could be implied from the circumstances of this case, such implied consent could not override the fact that the mother, who did appear, refused to consent. No reasonable reading of the statutory language would permit intervention over the express objection of the sole living parent.

The statute's requirement that motions to intervene "shall be liberally granted" does not warrant a different result. This liberal standard comes into play only after the statutory criteria are satisfied, namely, that an appearing parent consents or a parent fails to appear in the proceeding (*Matter of Ricky P.*, 135 Misc 2d at 29). Thus, in circumstances where an appearing parent refuses to consent, the child's relatives are without standing to move to intervene in an article 10 proceeding and the liberal

standard utilized in determining such motions is never triggered.

In addition, it is a fundamental principle of statutory construction that a court must construe a statute in a manner that will give effect to every word, if possible, and every word, phrase, clause or paragraph must be presumed to have some meaning (*see Matter of Yolanda D.*, 88 NY2d 790, 795 [1996]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 231). Unquestionably, the consent provision of subdivision (f) is an integral component of the intervention statute (*Matter of Ricky P.*, 135 Misc 2d at 31 [Legislature mandated obtaining approval of respondent parent as prerequisite to intervention by relatives]), and Family Court's "discretionary" grant of intervention to the K.s would render the consent requirement of subdivision (f) meaningless.

We reject the argument made by the K.s and the Law Guardian that recent amendments to the Family Court Act have impliedly repealed the parental consent requirement of section 1035 (f). The argument rests primarily on amendments to Family Court Act § 1017 (L 2005, ch 3, part A, § 10; L 2005, ch 671, § 1), which, inter alia, expanded the list of relatives that must be located and investigated as potential custodial resources to include any nonrespondent parent and any suitable relatives identified by either parent or the child if over five years of age. In addition, the amendments provide that if a suitable nonrespondent parent, relative or other person is identified as an appropriate resource, the court may place the child in the custody of such relative or person under either article 10 (child protective proceeding) or article 6 (custody proceeding).

The K.s and the Law Guardian argue that by increasing the number of relatives who must be investigated as potential custodial resources for a child, and by permitting such relatives to obtain custody of the child pursuant to article 10 or article 6, these new amendments evince a legislative intent to expand the role of family members in article 10 proceedings to the level of "de facto" party status. We disagree. Although it cannot be disputed that the amendments to section 1017 (1) and (2) were designed to enhance the role of family members in the disposition of child protective proceedings, the specific language of the amendments, which makes no mention of their status in the litigation, indicates that such enhanced role relates exclusively to their availability as

custodial resources for the child. Significantly, the recent amendments to section 1017, and others to section 1035, both left untouched the parental consent provision of section 1035 (f), and neither the K.s nor the Law Guardian cites any relevant statutory language or legislative history supporting their contentions that section 1035 (f) was impliedly repealed by these amendments.

In any event, repeal by implication is strongly disfavored absent a finding that the earlier and later statutes are in such conflict that both cannot be given effect (*Alweis v Evans*, 69 NY2d 199, 204-205 [1987]; McKinney's Cons Laws of NY, Book 1, Statutes § 391). Contrary to Family Court's holding, there is no clear conflict between the parental consent requirement of section 1035 (f) and the new amendments to section 1017. Although the consent requirement certainly limits the right of relatives to gain full party status in a child protective proceeding, it "does not work to give the respondent parent a veto power over interested relatives being considered as alternative caretakers for the children" (*Matter of Ricky P.*, 135 Misc 2d at 31). Indeed, the lack of intervenor status does not prevent suitable relatives from being considered as primary custodial resources for the child, and the amendments to section 1017 simply enhance that possibility by affirmatively requiring the location and investigation of additional relatives for such purpose. Thus, while the mother's refusal to consent in this case prevents intervention by the K.s pursuant to section 1035 (f), they may still offer themselves, or be offered by the Law Guardian or the Administration for Children's Services, as suitable relatives to be considered as potential custodial resources for Tristram (*see* Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1035, at 82-83 [refusal of respondent to consent does not preclude relatives from seeking to gain custody or to affect the custody decision]). We take no position on the merits of such potential offers.

We have considered and rejected the mother's application for a remittitur to a different Family Court judge.

Accordingly, the order of the Family Court, New York County (Sara P. Schechter, J.), entered on or about December 29, 2005, which, to the extent appealed from as limited by the briefs, granted the motion of the child's paternal uncle and his wife to intervene in the proceeding, should be reversed, on the law, without costs, the motion denied and the matter remanded for

expedited hearings on the dispositional phase of the neglect proceeding, custody and visitation.

SULLIVAN, J.P., WILLIAMS and McGUIRE, JJ., concur.

Order, Family Court, New York County, entered on or about December 29, 2005, reversed, on the law, without costs, the motion to intervene denied and the matter remanded for expedited hearings on the dispositional phase of the neglect proceeding, custody and visitation.