Roy Steven Holley and Annette Holley divorced in 1991. The divorce judgment, which incorporated the parties' settlement agreement, granted the mother custody of the parties' two minor children, awarded the father visitation, ordered the father to pay child support and to provide health insurance for the children, and ordered that the father was responsible for the two mortgages on the parties' marital home. The terms of the divorce judgment allowed the mother to live in the home "as long as she remains unmarried, does not cohabit with a member of the opposite sex or [until] the youngest child reaches the age of nineteen." The divorce judgment provided that upon the occurrence of any of the above events, the house was to be appraised and sold; in the event that occurred, the mother was awarded the first option to purchase the father's undivided one-half interest in the home.
In 1999, only one of the parties' children was still a minor. In December 1999, the father filed a petition to modify custody of the parties' minor child (hereinafter "the daughter"); he also requested an award of child support and that the trial court order that the marital home be sold in accordance with the terms of the divorce judgment. The daughter expressed a desire to live with her father, and the parties reached an agreement in accordance with the daughter's wishes. On April 7, 2000, the court, pursuant to the parties' agreement, awarded the father custody of the daughter, granted the mother visitation, and ordered the mother to pay child support. The court determined that the *Page 761 
provision of the divorce judgment pertaining to the marital home to be a property settlement and not child support. Therefore, the court held that it had no jurisdiction to modify that provision. However, the court reserved jurisdiction to modify its judgment and granted the father leave to file documentation to support his argument that the provision constituted child support.
On April 13, 2000, the father filed a postjudgment motion, with which he submitted documentation indicating that in 1994 he had filed for bankruptcy and that the United States Bankruptcy Court, Middle District of Alabama, had determined that the mortgages on the parties' marital home were in the nature of support and alimony, and that they were not, therefore, dischargeable in bankruptcy. On August 24, 2000, the trial court amended its previous judgment and found that the provisions regarding the marital home constituted child support. The minor child, then in the father's custody, no longer lived in the marital home with the mother. Therefore, the trial court, in accordance with the terms of the divorce judgment, terminated the father's obligation to pay the mortgages on the marital home, and it instructed the parties to sell the home. The trial court ordered that the mother had 30 days in which to exercise her purchase option. Neither party appealed from that judgment.
On September 25, 2000, the mother filed a motion pursuant to Rule 60(b)(6), Ala. Rule Civ. P., to set aside the August 24, 2000, judgment, arguing that the court had erroneously interpreted the provision of the divorce judgment. Following a hearing, the trial court denied the mother's Rule 60(b)(6) motion. The mother did not appeal that denial.
On November 20, 2000, the mother filed a petition to modify custody, alleging that the daughter had requested to return to the mother's custody after living with the father for approximately 10 months. The mother also requested an award of child support and requested the court to vacate its order to sell the marital home.
On April 18, 2001, the trial court entered an order on the mother's petition to modify, directing the mother to pay one-half of the mortgage payments while the child lived with the father, set child support based on the parents' current salaries, and ordered that all other terms of the original divorce judgment remain in effect. In essence, the court vacated its prior order compelling the sale of the marital home.
On appeal, the father first argues that the trial court was without authority to amend its August 24, 2000, order requiring that the marital home be sold because that order had "become final and unappealable." A trial court possesses an inherent power over its own judgments that enables it to interpret, implement, or enforce those judgments. Pattersonv. Patterson, 518 So.2d 739 (Ala.Civ.App. 1987). We find no ambiguity in the plain language of paragraph (7) of the settlement agreement that was incorporated into the divorce judgment. Paragraph (7) specifically states that the wife "shall reside therein so long as she remains unmarried, does not cohabit with a member of the opposite sex or [until] the youngest child reaches the age of nineteen." When the trial court ordered that all terms of the original divorce judgment remained in force, the mother, who was again vested with custody of the minor child, lived in the marital home in accordance with the original divorce judgment.
In this case, the original divorce judgment allowed the mother and the minor child to live in the marital home until the child reached the age of majority, so long as the mother did not remarry or cohabit. We conclude that the trial court's *Page 762 
judgment preventing the sale of the marital home enforced its original judgment. The trial court had the authority to clarify and enforce its original judgment. Grayson v. Grayson, 628 So.2d 918 (Ala.Civ.App. 1993). Furthermore, an award of child support is always modifiable upon proper proof. State ex rel. Solaiman v. Aviki, 694 So.2d 19 (Ala.Civ.App. 1997).
The father also contends that the trial court erred in: 1) failing to give him credit for the premiums he paid for the child's insurance coverage, 2) determining his child-support obligation where the record does not contain the requisite child-support guideline forms; and 3) ordering child support in excess of the amount provided for in the child-support guidelines. The trial court's April 18, 2001, judgment states:
 "[The mother] owes to [the father] the sum of $280.00 for the month of September, $280.00 for the month of October, $140.00 for the month of December, for her one-half of the mortgage payments on the marital home. These payments were due as the child resided with [father] during this period.
 "[Father] owes to [mother] child support for the month of December, January, February and March based on a yearly income of $60,000.00 per year. Support beginning April 1, 2002, shall be based on an income of $800.00 per month for each parent. [Father] shall submit to the court his W2 Forms and further information as to his retirement and the $71,000.00 severance check, which shall not be cashed without further orders of this court.
 "All other terms of the original divorce herein shall remain in full force and effect."
The divorce judgment specifically states that the child-support obligation was determined in accordance with the child-support guidelines. During the hearing it was established, through testimony, that the mother's gross monthly income was $852, and that the father's gross monthly income was $850. The trial court stated at the hearing on this matter that, "my order is that child support will be set pursuant to the guidelines at the rate of sixteen hundred dollars — that's eight hundred dollars apiece."
In Stone v. McLaughlin, 752 So.2d 522, 523 (Ala.Civ.App. 1999), this court held:
 "Rule 32 [, Ala. R. Jud. Admin.,] provides that `a standardized Child Support Guidelines form and a Child Support Obligation Income Statement/Affidavit form shall be filed in each action to establish or modify child support obligations and shall be of record and shall be deemed to be incorporated by reference in the court's child support order.' Thus, the filing of standardized Child Support Obligation Income Statement/Affidavits is mandatory, pursuant to Rule 32(E). This court has stated that `[w]ithout the child support form and the income statement forms, it is difficult and sometimes impossible for an appellate court to determine from the record if the trial court did or did not correctly apply the guidelines in establishing or modifying child support obligations.' Martin [v. Martin], 637 So.2d [901,] 902-03 [(Ala.Civ.App. 1994)]. Rule 32(A) establishes a presumption that the amount of child support determined by application of the guidelines is the proper amount of child support to be awarded. Cunningham v. Cunningham, 641 So.2d 807 (Ala.Civ.App. 1994)."
From the record it seems clear the trial court endeavored to apply the Rule 32 child-support guidelines. However, the parties are required to file the standardized Child Support Guidelines Form (CS 42) and a Child Support Obligation Income Statement/Affidavit Form (CS 41). Therefore, *Page 763 
we are unable to determine how the trial court reached its child-support determination. The failure to incorporate the Child Support Guideline forms is reversible error. Gordon v. Gordon, 804 So.2d 241 (Ala.Civ.App. 2001); Martin v. Martin, 637 So.2d 901 (Ala.Civ.App. 1994). Accordingly, we reverse the trial court's child-support award and remand this case for a determination of the father's child-support obligation pursuant to the Rule 32 child-support guidelines.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Murdock, J., concurs in the result.