CRAWLEY, Judge.
The appeals in this case represent the third appeal of a judgment awarding physical custody of A.M.A., a dependent child now five and one-half years old, to her foster mother, S.P. See W.T.M. v. Department of Human Res., 736 So.2d 1120 (Ala.Civ.App.1999) ("W.T.M.I"); W.T.M. v. S.P., 802 So.2d 1091 (Ala.Civ.App.2001) (“W.T.M.II”). The father has also petitioned for a writ of mandamus directing the juvenile court to award custody to the paternal aunt and uncle. The facts and procedural history were set out in W.T.M. II as follows:
“The parents of A.M.A. are not, and have never been, married to each other. In 1997, [the Department of Human Resources (‘DHR’)] filed a dependency petition, alleging that A.M.A., who was then an infant, was dependent because, it said, she had been born a ‘crack baby’ and her mother, it claimed, was using cocaine and not providing adequate care for her. DHR obtained protective custody of A.M.A., and the child was placed in foster care.
“In February 1998, W.T.M., who had established a relationship with A.M.A. at birth, was judicially determined to be her father. In March 1998, W.T.M., along with his sister S.B., petitioned for joint custody of the child, alleging that W.T.M. had suffered a disabling stroke and was unable to care for the child without help. After a dispositional hearing in August 1998, the juvenile court ordered that the child remain in the custody of DHR, with foster-care placement. W.T.M. and S.B. appealed that order to this court, but the appeal was dismissed as untimely. See W.T.M. v. Department of Human Res., 736 So.2d 1120 (Ala.Civ.App.1999).
“In May 1999, V.T., another sister of W.T.M. and the child’s paternal aunt, moved to intervene and, along with her husband, petitioned for custody of A.M.A. In June 1999, S.P., the child’s foster mother, also moved to intervene and sought custody. The juvenile court granted both motions to intervene and, following a dispositional hearing, awarded custody to S.P. and granted specific *57 rights of •visitation to the father as well as to V.T. and her husband.
“The judgment states, in part:
“ ‘After reviewing the law submitted by counsel for the parties, and hearing argument regarding the burden of proof required in this cause, this Court finds that said Petitions filed by child’s Paternal Aunt and Uncle, and by child’s Foster Parent should be considered as Petitions to Modify the child custody Order issued by this Court on August 7, 1998, granting custody of said child to [DHR]. In modification proceedings, the standard of proof is set out in [Ex parte McLendon, 455 So.2d 863 (Ala.1984)], whether a change in custody would materially promote the welfare of the child. The reason for this stricter standard is that uprooting children and moving them can be very traumatic.
“ ‘This Court finds that there have been no substantial changes in circumstances as presented by the paternal Aunt and Uncle that would materially promote the welfare of the child by changing custody from the Foster Parent to the Paternal Aunt and Uncle. This Court notes that said child has been in the custody of her Foster Parent during the past 2$ years where according to DHR reports said Foster Parent has provided child with a loving, nurturing environment and excellent care. Due to the fact that said child was found dependent by this Court on September 23, [1997], pursuant to Title 12-15-71 (a)(3)(c), Alabama Code 1975, a child found dependent may be awarded to a relative or other individual who, after study by [DHR], is found by the Court to be qualified to receive and care for the child. Therefore, the care, custody, and control of said minor child ... is hereby awarded to her Foster Parent [S.P.], with whom [DHR] placed said minor child approximately 2$ years ago.’”
802 So.2d at 1092-93. In W.T.M. II, this court held:
“[T]he trial court applied the McLendon standard, which was too stringent a burden of proof. Therefore, this cause must be remanded with instructions for the trial court to apply the correct standard, the ‘best interest’ standard. See Ex parte Perkins, 646 So.2d 46 (Ala.1994). In its determination of the child’s best interest, the juvenile court should keep in mind § 12-15-62(c), Ala. Code 1975 (mandating that ‘[i]f a permanent plan is not presented [by DHR] to the court [within 18 months of an order placing a child in foster care] there shall be a rebuttable presumption that the child shall be returned to the family’); the decision in R.C. v. Nachman, 969 F.Supp. 682 (M.D.Ala.1997), aff'd, 145 F.3d 363 (11th Cir.1998) (stating that DHR has the affirmative duty to facilitate family reunification whenever that goal is possible); and § 12-15-1.1, Ala. Code 1975 (stating the legislative goal of family reunification in juvenile dependency cases).
“The judgment of the juvenile court is reversed, and the cause is remanded with instructions to apply the ‘best interest’ standard to the disposition of this dependent child.”
802 So.2d at 1094.
Citing Ex parte Perkins, 646 So.2d 46 (Ala.1994), this court remanded the cause to the juvenile court to apply the “best-interest” standard. The rule of Perkins is that when the trial court uses an improper, higher standard to deny relief to a party requesting a modification of a prior custody order, the appellate court will not *58 review the evidence under the correct lower standard and direct the award of custody. Instead, the appellate reverses the judgment and remands the cause for the trial court to make a custody determination, applying the correct standard. Ex parte Perkins, 646 So.2d at 46-47.[1]
On remand in this case, the juvenile court entered the following order:
“In accordance with an Order issued by the Alabama Court of Civil Appeals, ... instructing this Court to apply the ‘best interest’ standard in this disposi-tional hearing of a dependent child, this Court finds that it is in the best interest of said minor child that her custody remain with [S.P., the foster mother] who has had physical custody of said minor child for the past 3-& years and has provided said child with a loving and nurturing environment, and excellent care. Child’s Paternal Aunt and Uncle shall have the standard rights of visitation with said minor child as previously Ordered by this Court on March 7, 2000.”
From the juvenile court’s order on remand, the father (case no. 2001064) and the paternal aunt and her husband (case no. 2001069) appealed to this court. The father also petitioned for a writ of mandamus, directing the juvenile court to award custody to the paternal aunt and uncle (case no. 2001065). We hold that the juvenile court erred by determining that it was in A.M.A.’s best interest to be placed in the custody of her foster mother, S.P.
The juvenile court’s factual findings — that S.P. had had physical custody of the child for 3$ years, that S.P. had provided the child with a loving and nurturing environment, and that S.P. had given the child excellent care — are fully supported by the record. However, those factual findings are insufficient, as a matter of law, to overcome the statutory policies and preferences expressed in § 12-15-1.1 and § 12-15-62(c), Ala.Code 1975.
Section 12-15-1.1 states, as a legislative goal for the juvenile court, that the court should “preserve and strengthen the child’s family whenever possible” and should maintain “a preference at all times for the preservation of the family.” See § 12-15-1.1(1) and (8). Section 12-15-62(c) states a preference for placing a dependent child who has been in long-term foster care with a relative over an unrelated caregiver.
Judge Murdock’s dissenting opinion cites our decision in W.T. v. State Department of Human Resources, 707 So.2d 647, 651 (Ala.Civ.App.1997), for the proposition that § 12-15-71 gives the juvenile court “ ‘the broadest possible range of placement options in the dispositional phase of a dependency proceeding.’ ” 851 So.2d at 67. It is true that, based on the law as it existed when W.T. was decided, the juvenile court was not required to give priority to placing a dependent child with a relative over an unrelated caregiver. After our decision in W.T., however, the Alabama statutes relating to the disposition of dependent children (§§ 12-15-62 and 12-15- *59 65) were amended, effective April 22, 1998, to comply with two pieces of congressional legislation, namely: (1) the Adoption and Safe Families Act of 1997, Pub.L. No. 105-89, 111 Stat. 2115 (1997) (“the ASFA”) (codified at 42 U.S.C. §§ 671 and 675) and (2) the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, § 505(3), 110 Stat., 2104 (August 22,1996), now codified, in relevant part, at 42 U.S.C. § 671(a).
Most of the Alabama amendments appear at § 12-15-62(c) and § 12-15-65(a), (m), and (n). The 1998 amendments added three sentences to subsection (c) of § 12-15-62, the first two of which are pertinent here:
“The purpose of the permanency hearing shall be to determine the permanency plan for the child which may include whether, and, if applicable, when, the child shall be (i) returned to the parent, (ii) placed for adoption wherein the Department of Human Resources shall file a petition for termination of parental rights, or (iii) referred for legal custody. The permanency hearing shall determine whether the plan will include placement in another planned permanent living arrangement in cases where the department has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, be placed for adoption, or be placed with a fit and willing relative, or with a legal custodian.”
(Emphasis added.) In W.T., we held that § 12-15-71 stated no preference for placing a dependent child with a parent, family member, or other relative. After the 1998 amendments to § 12-15-62(c), however, the “relative preference” does, as Judge Murdock’s dissenting opinion suggests, “override[] the Legislature’s express grant of broad discretion to the trial court in § 12-15-71(a).” 851 So.2d at 66.
The preference for placement of a dependent child with a “fit and willing relative” is derived' from 42 U.S.C. § 671(a). That section sets forth the requirements for states to obtain federal appropriations for “foster care and transitional independent living programs for children.” Subsection (19) of § 671(a) states:
“In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary [of Health & Human Services] which—
[[Image here]]
“(19) provides that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a [dependent] child, provided that the relative caregiver meets all relevant State child protection standards.”
Other jurisdictions have recognized that, in their state statutes concerning permanency hearings for dependent children, there is a “relative-placement preference” corresponding to federal legislation. See, e.g., State ex rel. V.F.R., 815 So.2d 1035 (La.Ct.App.2002); State ex rel. K.A.M., 809 So.2d 206 (La.Ct.App.2001); Marylou L. v. Tenecha L., 182 Misc.2d 457, 458, 698 N.Y.S.2d 827, 829 (1999); In re L.S. and K.S., 172 Vt. 549, 549, 772 A.2d 1077, 1078 (2001).
In passing the ASFA, Congress emphasized two themes: that the primary goal of the child welfare system is to secure the safety of children who enter the system and that children should not languish for extended periods in foster care without a plan for their timely permanent placement. See, e.g., David J. Herring, The Adoption and Safe Families Act — Hope and its Subversion, 34 Fam. L.Q. 329, 329 (2000); Ernestine Steward Gray, The Adoption and Safe Families Act of 1997: Confront *60 ing an American Tragedy, 46 La. B.J. 477, 478 (April 1999).
“ASFA introduces rather specific procedural measures and time lines designed to achieve timely permanent placements. First, ASFA requires a judicial hearing twelve months after the date on which the child entered foster care. This hearing is no longer labeled the ‘disposi-tional hearing,’ but is now termed the ‘permanency hearing.’ At this hearing, the judge is to determine whether the child will be returned to his or her parents, placed for adoption (following the termination of parental rights), referred for legal guardianship, or placed in another planned permanent living arrangement. ASFA allows the judge to order the latter permanency outcome only if the agency has documented compelling reasons as to why the other permanent outcomes would not be in the child’s best interests.”
Herring, 34 Fam. L.Q. at 338-39 (footnotes omitted).
The ASFA requires a State agency like DHR to petition for the termination of parental rights when any child has been in foster care for 15 of the last 22 months. See 42 U.S.C. § 675(5)(E). There are only three exceptions to this requirement: (1) if the child is being cared for by a relative; (2) if the State agency has documented in its case plan a compelling reason for determining that a petition to terminate parental rights is not in the best interest of the child; and (3) if the State has not provided the child’s family with “such services as the State deems necessary for the safe return of the child to the child’s home, if reasonable efforts ... are required to be made with respect to the child.” See 42 U.S.C. § 675(5)(E)(i)-(iii). See Herring, 34 Fam. L.Q. at 339-40 (stating that “[t]he agency can avoid the [termination-of-parental-rights-and-]adoption outcome if it has placed the child with a relative or has documented a compelling reason that termination of parental rights and adoption would not be in the best interests of the child”).
In the present case, DHR recommended, pursuant to § 12-15-62(c) — and consistent with the mandate of 42 U.S.C. § 675(5)(E)(i) — that the child be placed with Y.T. and E.T., her paternal aunt and uncle. The evidence demonstrates that V.T. and E.T., the father’s sister and brother-in-law, are willing and able to assume physical custody of the child, that the child has developed a relationship with them, and that they are fit and loving caregivers. The undisputed evidence indicates that the father has had a relationship with the child since her birth and that, but for the father’s debilitating stroke and the resulting physical limitations, he would himself be petitioning for custody of the child. Given the father’s limitations, awarding custody of the child to the paternal aunt and uncle is the nearest approximation to a real parent-child relationship possible for W.T.M. and A.M.A. The mere fact that the child has been in S.P.’s foster care for a long time is insufficient, as a matter of law, to prevail over the policies and preferences that support placing the child with her relatives.
Judge Murdock’s dissenting opinion states:
“If the evidence ... was insufficient as a matter of law to rebut some presumption favoring placement with a relative or to allow the trial court to use its discretion to determine that a permanent award of custody to S.P. was in the child’s best interests, we could have said so then. We did not. Instead, we remanded the case to the trial court to exercise its discretion and to determine the best interests of the child based on [the] record. The trial court did that.”
*61 851 So.2d at 69-70. In W.T.M. II, we did not state that the evidence was insufficient as a matter of law to support the trial court’s judgment awarding custody to the foster mother; the trial court’s judgment was based on an incorrect standard and it was necessary to remand the case to the trial court with directions that it (1) conduct another review of the record applying the correct standard and then (2) redetermine the custody award. This court had no authority to redetermine custody. See Ex parte Perkins, supra. On return to remand, we could affirm the court’s rede-termination of custody if that redetermi-nation was supported by additional factual findings (based on the original record) indicating that the paternal aunt and uncle were either unfit or unwilling to have custody of the child. Here, the trial court made factual findings that were insufficient as a matter of law. Because of our disposition of the appeal, the father’s petition for the writ of mandamus is denied as moot.
The judgment of the juvenile court is reversed.
2001064 and 2001069 — REVERSED.
2001065 — PETITION DENIED.
PITTMAN, J., concurs.
YATES, P.J., and THOMPSON, J., concur in the result.
MURDOCK, J., dissents.

. In Perkins, the trial court applied the standard established in Ex parte Terry, 494 So.2d 628 (Ala.1986), to deny a father’s request for a custody modification. This court held that the trial court had erred by using the Terry standard when it should have used the standard established in Ex parte McLendon, 455 So.2d 863 (Ala.1984). This court then reviewed the evidence and determined that the father had met the McLendon standard; we remanded the case with directions for the trial court to award custody to the father. The Alabama Supreme Court reversed our judgment, holding that this court had no authority to direct an award of custody, but had the authority only to remand for the trial court to apply the correct standard.