895 So.2d 271 (2003)
Ex parte E.T. and V.T. (In re E.T. and V.T. v. S.P.)
2020423.
Court of Civil Appeals of Alabama.
September 12, 2003.
Rehearing Denied March 12, 2004.
Joe W. Morgan III, for petitioners V.T. and E.T.
Kathryn L. "Sunny" Lippert, Birmingham, filed a reply brief in support of the petition for writ of mandamus, for father W.T.M.
Bryant A. Whitmire, Jr., of Whitmire & Coleman, Birmingham; Albert L. Jordan, Michael L. Jackson, and Phillip D. Corley, Jr., of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham; and Douglas Rogers, Birmingham, for respondent S.P.
Ginette A. Dow, Bessemer, guardian ad litem for A.M.A., filed brief in response to the petition for writ of mandamus.
*272 MURDOCK, Judge.
V.T. and E.T. petition for a writ of mandamus directing the juvenile court to vacate its order providing for visitation between A.M.A., a dependent child, and A.M.A.'s former foster mother, S.P., and her former foster siblings. We deny the petition.
This is the fourth time that issues related to the custody of A.M.A., a dependent child, have been before this court. See W.T.M. v. Department of Human Res., 736 So.2d 1120 (Ala.Civ.App.1999) ("W.T.M.I"); W.T.M. v. S.P., 802 So.2d 1091 (Ala.Civ.App.2001) ("W.T.M.II"); W.T.M. v. S.P., 851 So.2d 55 (Ala.Civ.App.2002) ("W.T.M. III") (plurality opinion joined by two judges, with two judges concurring in the result).
A.M.A. was born in September 1996. When A.M.A. was seven months old, the *273 Department of Human Resources ("DHR") obtained protective custody of her based upon a dependency petition that alleged that A.M.A. had been born a "crack baby" and that her mother was using cocaine and not providing adequate care for her. When A.M.A. was nine months old, S.P. became her foster mother.
A.M.A.'s parents have never been married to each other; however, in February 1998, W.T.M. was judicially determined to be A.M.A.'s father. In March 1998, W.T.M. and his sister, S.B., jointly petitioned for joint custody of A.M.A., alleging that W.T.M. had suffered a disabling stroke and was unable to care for the child without help. Questions arose, however, as to the suitability of S.B. and her husband to receive custody of the child, and, after a dispositional hearing in August 1998, the juvenile court ordered that the child remain in the custody of DHR, with foster-care placement. W.T.M. and S.B. appealed that order, but the appeal was dismissed by this court as untimely in W.T.M. I.
In May 1999, another sister of W.T.M., V.T., moved to intervene and, along with her husband, E.T., petitioned the juvenile court for custody of A.M.A. In June 1999, S.P., who by then had been the child's foster mother for approximately two years, also moved to intervene for the purpose of seeking custody. The juvenile court granted both motions to intervene. Following a dispositional hearing in February 2000 in which the court heard extensive testimony from numerous witnesses, the court entered an order in March 2000 awarding custody of A.M.A. to S.P. and granting specific visitation rights to W.T.M. and to V.T. and E.T.
The juvenile court's March 2000 judgment stated, in part:
"After reviewing the law submitted by counsel for the parties, and hearing argument regarding the burden of proof required in this cause, this Court finds that said Petitions filed by child's Paternal Aunt and Uncle, and by child's Foster Parent should be considered as Petitions to Modify the child custody Order issued by this Court on August 7, 1998, granting custody of said child to [DHR]. In modification proceedings, the standard of proof is set out in [Ex parte McLendon, 455 So.2d 863 (Ala.1984)], whether a change in custody would materially promote the welfare of the child. The reason for this stricter standard is that uprooting children and moving them can be very traumatic.
"This Court finds that there have been no substantial changes in circumstances as presented by the paternal Aunt and Uncle that would materially promote the welfare of the child by changing custody from the Foster Parent to the Paternal Aunt and Uncle. This Court notes that said child has been in the custody of her Foster Parent during the past 2 1/2 years where according to DHR reports said Foster Parent has provided child with a loving, nurturing environment and excellent care. Due to the fact that said child was found dependent by this Court on September 23, [1997], pursuant to Title 12-15-71(a)(3)(c), Alabama Code 1975, a child found dependent may be awarded to a relative or other individual who, after study by [DHR], is found by the Court to be qualified to receive and care for the child. Therefore, the care, custody, and control of said minor child ... is hereby awarded to her Foster Parent [S.P.], with whom [DHR] placed said minor child approximately 2 ½ years ago."
In W.T.M. II, this court concluded that the juvenile court, by applying the standard set out in Ex parte McLendon, 455 *274 So.2d 863 (Ala.1984), had applied the wrong standard, and this court remanded the case with instructions for the juvenile court to apply the "best interest" standard. On June 22, 2001, on remand from W.T.M. II, the juvenile court entered the following order:
"In accordance with an Order issued by the Alabama Court of Civil Appeals, . . . instructing this Court to apply the `best interest' standard in this dispositional hearing of a dependent child, this Court finds that it is in the best interest of said minor child that her custody remain with [S.P., the foster mother] who has had physical custody of said minor child for the past 3-½ years and has provided said child with a loving and nurturing environment, and excellent care. Child's Paternal Aunt and Uncle shall have the standard rights of visitation with said minor child as previously Ordered by this Court on March 7, 2000."
From the juvenile court's June 2001 order, the father and the paternal aunt and uncle appealed to this court. The father also petitioned for a writ of mandamus. This court reversed the juvenile court's judgment and denied the father's petition for a writ of mandamus in W.T.M. III. In an order dated December 13, 2002, the Alabama Supreme Court denied S.P.'s petition for a writ of certiorari because of S.P.'s failure to comply with various provisions of Rule 39, Ala. R.App. P.
In the wake of the foregoing, on January 7, 2003, the juvenile court entered the following order:
"[I]n accordance with the Order issued by the Alabama Court of Civil Appeals [in W.T.M. III] said custody of [A.M.A.] is hereby awarded to her paternal aunt and uncle.... Over objection of ... the paternal aunt and uncle, DHR [is] ordered to arrange family counseling for said minor child to assist her in the transition of custody. The [paternal aunt and uncle] are encouraged to allow said child to have contact with her previous custodian and foster siblings to promote the child's emotional well being."
On January 15, 2003, S.P. filed a postjudgment motion seeking custody of the child pending the outcome of a petition for writ of certiorari she had filed in the United States Supreme Court[1] or, in the alternative, a stay of the juvenile court's January 7, 2003, order. On January 17, 2003, the paternal aunt and uncle filed a motion in opposition.
On January 28, 2003, the juvenile court held a hearing in this matter; no evidence was presented at this hearing. On February 12, 2003, the juvenile court entered the following additional order:
"[S.P.'s] motion to stay the January [7], 2003 order of this court ... is denied. However, pursuant to the Alabama Juvenile Justice Act, § 12-15-1.1, this Court finds that it is in the best interest of [the child] that [S.P.] and [the child's] foster siblings have the following visitation with [the child]:
"[setting out the specific terms of visitation]
"Said visitation is to begin immediately and is ordered by this Court so that the well being of [the child] will be protected during her change of custody to the [paternal aunt and uncle], so that [the child] will develop a sense of security and stability during the transition. DHR has been ordered to provide counseling for [the child] under the supervision *275 of a qualified therapist to address any trauma of uprooting [the child] from her prior foster home. Said DHR is ordered to provide this Court with a copy of said counselor's report every 60 days regarding the progress of [the] child's transition.
"It is clear that [S.P.] may pursue any appellate review of this case and this Court will abide by any ruling if appropriate. Said case file ordered closed."
V.T. and E.T. assert in their petition to this court that the juvenile court was without authority to enter this February 12, 2003, order.
We begin our analysis by noting that W.T.M. III was a plurality opinion; only two of the five judges of this court concurred in the reasoning by which the main opinion in W.T.M. III reached the results that it did. Those results were (1) the reversal of a particular judgment, the juvenile court's June 2001 judgment that had awarded custody of the child to S.P. based on the evidence presented in the February 2000 hearing, and (2) the denial of the father's petition for a writ of mandamus.[2]
We also emphasize that this case concerns a dependency proceeding. It was a proceeding with both judicial and nonjudicial aspects that was initiated and, in its nonjudicial aspects, administered by DHR. Moreover, the dependency process is a dynamic and ongoing process in which the trial court may be, and typically is, called upon repeatedly to determine what disposition of the child is in the child's best interest. That is, the court is called upon to make such a determination at the outset of the dependency and, then, as developments in the lives of the child and the child's parents may warrant, the court makes other such determinations from time to time during the course of the dependency proceeding until that process is concluded.
The fact that the juvenile court's June 2001 judgment was reversed in W.T.M. III with only a plurality opinion (i.e., without an opinion of "the court") and that it was a judgment in an ongoing dependency proceeding, bears significantly upon the issue of what this court did and did not do in W.T.M. III. Given the foregoing, this court did not mandate an award of custody to V.T. and E.T.; nor did this court mandate any particular disposition of the child. Nor did this court, by reversing one attempted disposition of the child at one particular point in time, dictate to the juvenile court when it would be in the child's best interest, absent that particular disposition, to close the dependency proceeding or to make some other disposition of the child. Nor did this court prohibit the juvenile court from effecting or implementing whatever disposition it might eventually make in a manner the court might find to be in the child's best interests, in accordance with the Alabama Juvenile Justice Act. See Ala.Code 1975, § 12-15-71(a)(1) and (4); Ala.Code 1975, § 12-15-1.1. What this court did do was reverse a particular judgment of the juvenile court, entered in June 2001, awarding primary custody of the child to S.P. based upon the facts demonstrated to exist at that time. In other words, the "result" reached in the appeal in W.T.M. III was the reversal of one attempted disposition of the child by the juvenile court.
The dependency proceeding at issue in this case is a proceeding that was initiated by DHR in 1997, in conjunction with taking the child into protective custody and *276 placing her in foster care with S.P. Neither V.T., E.T., nor S.P., were parties to the dependency action at its inception. During the course of the dependency proceeding, however, V.T. and E.T. eventually filed a motion asking that they be allowed to intervene in the proceeding and asking that the juvenile court award custody of the child to them. S.P. filed a similar motion at about the same time in which she asked that she be allowed to intervene and that the juvenile court award custody of the child to her.
The juvenile court might have denied both motions to intervene, or it might have denied both motions seeking a dispositional judgment and allowed the dependency proceeding to continue, subject to subsequent dispositional motions filed by DHR or other parties that might thereafter intervene. The fact that it chose to grant the motions to intervene and to make an award of custody to one of the intervenors does not, ipso facto, mean that when that particular judgment is reversed the trial court necessarily must immediately conclude the dependency proceeding or make a final dispositional custody award to the other intervenor.
The only mandate of this court in W.T.M. III was the reversal of the June 2001 disposition that had been attempted by the juvenile court. Nothing in that mandate prevented the juvenile court from concluding on remand, assuming the record supported such a conclusion, that absent that attempted disposition, it would be in the child's best interest for the dependency proceeding to remain open for some additional period without a final dispositional order. Similarly, had the record on remand supported the conclusion that it would be in the child's best interest, perhaps because of developments since the February 2000 hearing that reflected adversely on the paternal aunt and uncle as prospective custodians for this particular child, or because of developments in the life of the child since the February 2000 hearing, to award custody to some party other than V.T. and E.T., there was no mandate from this court that prevented the juvenile court from doing so. Nor were other options that were available to the court under § 12-15-71, Ala.Code 1975, necessarily foreclosed by this court's opinion. In other words, there was no mandate by this court as to exactly how or when or in what particular manner to bring this dependency proceeding to a close.[3]
Accordingly, there was no mandate by this court in W.T.M. III that removed an award of visitation rights to the child and her foster mother and foster siblings, whether in aid of the implementation of an *277 award of primary custody to another party or otherwise, from among the court's available options under § 12-15-71. When the juvenile court had earlier granted custody to the foster mother on remand after W.T.M. II, it awarded visitation to the father, W.T.M., and to two nonparents, E.T. and V.T., because it determined, pursuant to § 12-15-71, that it would be in the child's best interests to do so. Following the reversal of that judgment by this court in W.T.M. III, nothing prevented the juvenile court, when it awarded primary custody of the child to E.T. and V.T., from ordering that that custody arrangement should be implemented with visitation between the child and her foster mother and foster siblings, if that arrangement was deemed by the court, pursuant to § 12-15-1.1 and § 12-15-71, to be in the child's best interests.
Thus, the question before us is not whether the juvenile court had the authority to enter the February 12, 2003, judgment now at issue, including its order that the child be allowed visitation with her former foster mother and her former foster siblings, but whether it still had jurisdiction to enter any order in this case after January 29, 2003  14 days after S.P. filed her postjudgment motion.[4] V.T. and E.T. argue that the juvenile court's January 7, 2003, order was a "final" judgment, that the provision for visitation therefore could only be made by the juvenile court in response to a postjudgment motion, and that the time for the juvenile court to do so expired on January 29, 2003. Considering the nature of this case  a dependency proceeding  and given the particular procedural history and the various judgments and orders entered by the juvenile court, we conclude that the juvenile court was not foreclosed from entering its February 12 order.
As discussed above, this case was an ongoing dependency proceeding even following the decision of this court in W.T.M. III. In that context, we note that the juvenile court's January 7, 2003, order provided for the continued involvement of DHR, the party responsible for bringing and maintaining this dependency proceeding, in implementing and facilitating the change of custody. In conjunction with DHR's continued involvement, and the implicit requirement that DHR advise the juvenile court as to any difficulties encountered, the juvenile court also expressly stated its finding that visitation between the child and her foster mother and foster siblings "would promote the child's emotional well being." It is also noteworthy that the court's January 7, 2003, order did not contain a provision ordering that the case file be closed.
On January 10, 2003, the guardian ad litem filed with the juvenile court a motion that reads as follows:

*278 "MOTION FOR IMMEDIATE VISITATION

"COMES NOW, the Guardian Ad Litem ... in the above styled case and respectfully files this Motion for Immediate Visitation on the following grounds:
"1. That [S.P.], foster parent of the above minor child, has been the only `Mother' the minor child has known.
"2. That the minor child's brothers and sister are deeply upset and do not understand why their sister is going to be taken away from their family.
"3. That the minor child has attended school and church on a regular basis which is in the best interest of the minor child that she continue in these activities.
"4. The minor child was enrolled in a extra-curricular activity, which she enjoyed and attended on a regular basis and it would be in the child's best interest that [S.P.] be allowed to continue this extra-curricular activity with the child.
"5. That [S.P.] provided a loving Christian environment for the minor child that continuing a relationship with [S.P.] would be in the best interest of the minor child.
"6. In the last Order of Judge Schilleci, custody was given to [S.P.] Therefore, visitation was not an issue at the time. Later on, the Court of Appeals reversed this Court's decision on the issue of custody, therefore, the Guardian Ad Litem requests that this Court now address the issue of visitation with [S.P.]
"WHEREFORE, PREMISES CONSIDERED, the Guardian Ad Litem ask that this Honorable Court grant Visitation with [S.P.]"
On January 28, 2003, the juvenile court conducted a hearing in which it urged the parties to submit to the court proposed timetables for the diminution of S.P.'s custodial responsibilities. In so doing, it clearly indicated its intention and belief that its January 7, 2003, order was not intended to effect an immediate closure of the dependency proceeding and was not the court's final "word" in regard to the child.
The juvenile court thereafter entered its February 12, 2003, order. Citing § 12-15-1.1 of the Alabama Juvenile Justice Act, the juvenile court tacitly agreed with the guardian ad litem's recommendation that the child's "emotional well-being" and "sense of security and stability" would be served by allowing her to visit with her foster mother and her foster siblings. The court included provisions in its February 2003 order elaborating upon and implementing its previous directive to DHR to stay involved with the child, explaining that the purpose of such involvement was "to address any trauma of uprooting the child from her prior foster home." In so doing, the juvenile court left no doubt that both the continued involvement of DHR and the counselor it was to arrange, and the visitation it was ordering, were to the same end:
"Said visitation is to begin immediately and is ordered by this court so that the well-being of [the child] will be protected during her change of custody to [V.T. and E.T.], so that [the child] will develop a sense of security and stability during the transition. DHR has been ordered to provide counseling of [the child] under the supervision of a qualified therapist to address any trauma of uprooting *279 [the child] from her prior foster home. Said DHR is ordered to provide this court with a copy of said counselor's report every 60 days regarding the progress of the child's transition."
Further, unlike the juvenile court's January 7, 2003, order, the court's February 12, 2003, order stated that: "Said case file ordered closed."
Given the nature of this case, its procedural history, and the provisions of the written orders and judgments at issue, we conclude that the juvenile court reasonably considered that its January 7, 2003, order was not one intended to bring immediate closure to the dependency proceeding. Rather the juvenile court retained jurisdiction in this ongoing dependency proceeding to complete the task of addressing all of the rights and interests of the parties. Cf. Ex parte Edwards, 727 So.2d 792 (Ala.1998); Tomlinson v. Tomlinson, 816 So.2d 57 (Ala.Civ.App.2001) (holding that a trial court's order that did not dispose of the matter of child support was not final in a divorce proceeding).
We also note that a trial court has the inherent authority to "interpret, implement and enforce" its judgments. Holley v. Holley, 829 So.2d 759, 761 (Ala.Civ.App.2002); Grayson v. Grayson, 628 So.2d 918, 919 (Ala.Civ.App.1993). In this regard, it appears that the juvenile court did not consider its January 7, 2003, order as one that brought closure to the dependency proceeding or that included all relief needed to effect a final disposition of the child in a manner that best served the child's welfare and interests. The juvenile court's understanding of its January 7 order as lacking needed transitional provisions was made clear during the January 28 hearing, when the juvenile court advised the parties that they should submit recommendations regarding that transition. In its February 12 order, the juvenile court for the first time included previously omitted transitional provisions. By doing so, the juvenile court provided for the orderly implementation of its previous order. Further, the juvenile court explained its intentions regarding DHR's ongoing involvement in the transition process, and it provided for implementing and enforcing DHR's role by expressing specific reporting obligations on the part of DHR in relation to the counseling that DHR had previously been ordered to arrange for the parties.
The juvenile court's January 7 order, as evidently construed by the court itself, was not intended to and did not bring a close to the dependency proceeding. The juvenile court evidently did not consider that that order fully adjudicated the interests of one party to the dependency proceeding  the child. It is the child's interests that DHR, see Ala.Code 1975, § 38-2-6(10), and the guardian ad litem are commissioned to represent and protect. It is the child's interests that are the reason for the dependency proceeding in the first place. It is the child's interests for which the State, through the juvenile court, has a direct parens patriae responsibility until the dependency proceeding is closed.
Section 12-15-71(a)(1), Ala.Code 1975, provides that upon disposition of a dependent child, the court may "[p]ermit the child to remain with the parents, guardian, or other custodian of the child, subject to conditions and limitations as the court may prescribe." (Emphasis added.) Section 12-15-71(a)(4), Ala.Code 1975, provides that the court may "[m]ake any other order as the court in its discretion shall deem to be for the welfare and best interests of the child." The juvenile court's entry of its February 12, 2003, order was part of the fulfillment of its ongoing responsibility to the child in this dependency proceeding until the dependency proceeding was closed. See generally Ala.Code *280 1975, § 12-15-1.1. We cannot conclude that the juvenile court erred in this particular case by not considering its own order of January 7 as barring it from making such further orders at it may have deemed necessary to protect the child. See generally Rheams v. Rheams, 378 So.2d 1125, 1128 (Ala.Civ.App.1979) ("Our rules of civil procedure did not alter the power of a court to modify an interlocutory judgment at any time prior to a final judgment. 11 Wright & Miller, Federal Practice and Procedure, § 2852 at 145 (2d ed.1970)."); cf. Grayson, 628 So.2d at 919 ("Property settlements pursuant to divorce judgments generally are not modifiable; however, this court has held that although a divorce judgment is final for the purpose of appeal, it may also be interlocutory in nature `insofar as necessary to implement or enforce the provisions as to final disposition of the property.'"); T.L.R. v. State, 608 So.2d 767 (Ala.Crim.App.1992).
Our Supreme Court has stated:
"`A writ of mandamus is an extraordinary remedy, however, that should be granted only if the trial court clearly abused its discretion by acting in an arbitrary or capricious manner.... The petitioner must demonstrate the following: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Adams, 514 So.2d 845, 850 (Ala.1987).'"
Ex parte King, 821 So.2d 205, 208 (Ala.2001) (quoting Ex parte Edwards, 727 So.2d 792, 794 (Ala.1998)). Based on the record presented in this case, we cannot conclude that the juvenile court's February 12, 2003, order constituted a clear abuse of its discretion or an "arbitrary or capricious" exercise of its discretion.[5]
PETITION DENIED.
THOMPSON and PITTMAN, JJ., concur in the result.
YATES, P.J., and CRAWLEY, J., dissent.
THOMPSON, Judge, concurring in the result.
Given the unique facts of this dependency action and the motions filed by both S.P. and the guardian ad litem following the trial court's January 7, 2003, order, I agree that that order was not a final judgment that would prevent the trial court from entering its February 12, 2003, visitation order. See § 12-15-71(a), Ala.Code 1975. The February 12, 2003, order enforced that part of the trial court's earlier order recommending that the paternal aunt and uncle facilitate visitation between the child and S.P. in order to serve the child's best interests. The parties failed to independently reach a compromise with regard to that visitation. The trial court, by awarding visitation to S.P. in its February 12, 2003, order, clearly took action that would serve to promote the best interests of the child involved in this matter by making the transition of changing custody easier on the child. See Ex parte Fann, 810 So.2d 631, 638 (Ala.2001) ("It is the court's duty to scrupulously guard and protect the interests of children. And in the context of child-custody proceedings, the dominant consideration is always the best interest of the child."). Therefore, I concur in the result in the main opinion's denial of the paternal aunt and uncle's petition for the writ of mandamus seeking *281 to vacate the trial court's order of February 12, 2003.
CRAWLEY, Judge, dissenting.
I respectfully dissent. The juvenile court's February 12, 2003, order purporting to amend its January 7, 2003, judgment was a nullity because the former foster mother's postjudgment motion had already been denied by operation of law when the court failed to rule upon that motion by January 29, 2003. The paternal aunt and uncle are therefore entitled to the relief they seek by way of their petition for the writ of mandamus. I would grant the petition and issue the writ instructing the juvenile court to vacate its order of February 12.
I wholeheartedly agree with the following statement in the main opinion:
"Following the reversal ... in [W.T.M. v. S.P., 851 So.2d 55 (Ala.Civ.App.2002)], nothing prevented the juvenile court, when it awarded primary custody of the child to E.T. and V.T., from ordering that that custody arrangement should be implemented with visitation between the child and her foster mother and foster siblings, if that arrangement was deemed by the court ... to be in the child's best interests."
895 So.2d at 277. In its January 7 judgment, the juvenile court did not order visitation with the former foster mother and foster siblings; the court encouraged visitation. The wording of the judgment indicates that, although the trial judge may have thought visitation was advisable, he specifically chose not to order it. The purported visitation "order" was entered on February 12, 14 days after the former foster mother's postjudgment motion had been denied by operation of law. Thus, although I totally agree with the main opinion that the juvenile court had the authority to order visitation with the former foster mother and foster siblings, the real question  as the main opinion explicitly states it  is whether the court still had jurisdiction to enter any order after January 29. The answer is no.
Although a juvenile court's orders in a dependency case are never "final" in the sense that the court retains jurisdiction during the child's minority to modify its judgments upon a showing of changed circumstances, see Ashbee v. Cozart, 611 So.2d 1103, 1106 (Ala.Civ.App.1992); and Committee Comments, Rule 4, Ala. R.App. P., in order to exercise its continuing jurisdiction over a juvenile, the court must be presented with a properly filed new petition to modify its former judgment in which changed circumstances are alleged, cf. Ex parte Davidson, 782 So.2d 237, 240 (Ala.2000)(applying the principle with respect to modification of the child-custody provision in a divorce judgment); Farmer v. Farmer, 842 So.2d 679 (Ala.Civ.App.2002)(applying the principle with respect to a petition to modify periodic alimony).
I consider the following facts (upon which the main opinion relies in deciding that the juvenile court's January 7, 2003, order was not final) to be legally insignificant insofar as determining the finality of the January 7 judgment is concerned: that W.T.M. v. S.P., 851 So.2d 55 (Ala.Civ.App.2002) ("W.T.M.III"), was a plurality opinion; that W.T.M. III did not mandate that custody of the child be awarded to the paternal aunt and uncle; that the juvenile court's January 7 order did not contain a provision directing that the case file be closed; and that, after January 29, when it no longer had jurisdiction to enter an order in this case, "the juvenile court tacitly agreed with the guardian ad litem's recommendation that the child's `emotional well-being' and `sense of security and stability' would be served by allowing her to visit *282 with [the former] foster mother and ... foster siblings."
The approach to determining the finality of the January 7 judgment used in the main opinion will wreak havoc with the appealability of juvenile court orders in dependency cases and, perhaps, other cases as well.
YATES, P.J., concurs.
NOTES
[1] S.P.'s petition for a writ of certiorari to the United States Supreme Court was denied on May 19, 2003.
[2] While the plurality opinion in W.T.M. III stated that the father's petition for the writ of mandamus should be denied because it was moot, only two of this court's five judges voted to concur in that opinion.
[3] "[W]here [an appellate] court gives no precise directions on remand as to how a case is to proceed as to a certain matter, the lower court may proceed in any manner that is not inconsistent with the [appellate] court's opinion." Durbin v. Durbin, 818 So.2d 409, 411 (Ala.Civ.App.2001). As discussed, there was no opinion of the court in W.T.M. III  only a plurality opinion. The reversal of the juvenile court's June 2001 order, based as it was on the juvenile court's February 2000 hearing and the evidence adduced at that hearing, was the only mandate of this court in W.T.M. III. The plurality opinion concluded by merely stating that "[t]he judgment of the juvenile court is reversed." 851 So.2d at 57. Indeed, given the ongoing and dynamic nature of the dependency proceeding, no remand was even necessary. It was enough for this court, as it did, to simply reverse the June 2001 judgment that was presented. A fortiori, it would not have been proper to remand this case for the entry of a judgment based on the same February 2000 hearing that served as the basis for the judgment this court reversed. The facts shown at that hearing had no doubt long since been superseded by over two years of further developments in the lives of the child and of the parties.
[4] Rule 1, Ala. R. Juv. P., states, in pertinent part:

"(A) These rules govern the procedure for all matters in the juvenile court. If no procedure is specifically provided in these rules or by statute, the Alabama Rules of Civil Procedure shall be applicable to the extent not inconsistent herewith; provided, however, that the Rules of Criminal Procedure shall be applicable to the extent not inconsistent herewith.
"(B) ... All post-judgment motions, whether provided for by the Alabama Rules of Civil Procedure or the Alabama Rules of Criminal Procedure, must be filed within 14 days after entry of judgment and shall not remain pending for more than 14 days."
Rule 59.1, Ala. R. Civ. P., states, in pertinent part, that: "A failure by the trial court to dispose of any pending post-judgment motion within the time permitted hereunder, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period."
[5] An "adequate remedy" exists in the form of an appeal as to any issue regarding the substantive merits of the juvenile court's February 12, 2003, order.