CRAWLEY, Judge,
dissenting.
I respectfully dissent. The juvenile court’s February 12, 2003, order purporting to amend its January 7, 2003, judgment was a nullity because the former foster mother’s postjudgment motion had already been denied by operation of law when the court failed to rule upon that motion by January 29, 2003. The paternal aunt and uncle are therefore entitled to the relief they seek by way of their petition for the writ of mandamus. I would grant the petition and issue the writ instructing the juvenile court to vacate its order of February 12.
I wholeheartedly agree with the following statement in the main opinion:
“Following the reversal ... in [W.T.M. v. S.P., 851 So.2d 55 (Ala.Civ.App.2002) ], nothing prevented the juvenile court, when it awarded primary custody of the child to E.T. and V.T., from ordering that that custody arrangement should be implemented with visitation between the child and her foster mother and foster siblings, if that arrangement was deemed by the court ... to be in the child’s best interests.”
895 So.2d at 277. In its January 7 judgment, the juvenile court did not order visitation with the former foster mother and foster siblings; the court encouraged visitation. The wording of the judgment indicates that, although the trial judge may have thought visitation was advisable, he specifically chose not to order it. The purported visitation “order” was entered on February 12, 14 days after the former foster mother’s postjudgment motion had been denied by operation of law. Thus, although I totally agree with the main opinion that the juvenile court had the authority to order visitation with the former foster mother and foster siblings, the real question — as the main opinion explicitly states it — is whether the court still had jurisdiction to enter any order after January 29. The answer is no.
Although a juvenile court’s orders in a dependency case are never “final” in the sense that the court retains jurisdiction during the child’s minority to modify its judgments upon a showing of changed circumstances, see Ashbee v. Cozart, 611 So.2d 1103, 1106 (Ala.Civ.App.1992); and Committee Comments, Rule 4, Ala. R.App. P., in order to exercise its continuing jurisdiction over a juvenile, the court must be presented with a properly filed new petition to modify its former judgment in which changed circumstances are alleged, cf. Ex parte Davidson, 782 So.2d 237, 240 (Ala.2000)(applying the principle with respect to modification of the child-custody provision in a divorce judgment); Farmer v. Farmer, 842 So.2d 679 (Ala.Civ.App.2002)(applying the principle with respect to a petition to modify periodic alimony).
I consider the following facts (upon which the main opinion relies in deciding that the juvenile court’s January 7, 2003, order was not final) to be legally insignificant insofar as determining the finality of the January 7 judgment is concerned: that W.T.M. v. S.P., 851 So.2d 55 (Ala.Civ.App.2002) (“W.T.M. III ”), was a plurality opinion; that W.T.M. III did not mandate that custody of the child be awarded to the paternal aunt and uncle; that the juvenile court’s January 7 order-did not contain a provision directing that the case file be closed; and that, after January 29, when it no longer had jurisdiction to enter an order in this case, “the juvenile court tacitly agreed with the guardian ad litem’s recommendation that the child’s ‘emotional well-being’ and ‘sense of security and stability’ would be served by allowing her to visit *282 with [the former] foster mother and ... foster siblings.”
The approach to determining the finality of the January 7 judgment used in the main opinion will wreak havoc with the appealability of juvenile court orders in dependency cases and, perhaps, other cases as well.
YATES, P.J., concurs.