MURDOCK, Judge,
concurring specially.
I write separately to emphatically state that, even if the standard articulated in Ex parte McLendon, 455 So.2d 863 (Ala.1984), were deemed applicable in this case, given the history and the unique facts of this case, I do not see how the trial court reasonably could conclude that the McLen-don standard was not met.
First, although the juvenile court made no explicit finding as to whether a material change of circumstances occurred after the entry of the January 2003 and February 2003 orders, nothing indicates that it did not find there to be a material change of circumstances. In any event, I conclude that it would have been error for the trial court not to so find. After the entry of those orders, A.M.A. experienced emotional trauma. The persons with whom she had lived as her mother and her brothers and sister for over five years (all but the first few months of her life at the time) were suddenly relegated to visitors. Along with the emotional upheaval of the transition, a comparison of “the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each [party] to provide for the *1134 emotional, social, moral, material and educational needs of the children,” see Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981), offered by S.P., on the one hand, and V.T. and E.T., on the other, reflects that A.M.A.’s situation was worsened in almost all of those categories (and bettered in none) as a result of the custody transition or that things were not as they had been represented at the underlying trial in Ex parte W.T.M., 851 So.2d 55 (Ala.Civ. App.2002) (“W.T.M. III”).[3] It now appears clear that the impact of the decision in W.T.M. Ill, a plurality opinion that simply reversed the judgment at issue without further instruction to the juvenile court, and which the juvenile court incorrectly read as a mandate to award V.T. and E.T. custody of A.M.A., greatly impacted A.M.A. and did not further her best interest but forced her to succumb to a custody placement that was traumatic and that was not “as advertised.”
As to the remaining McLendon-standard criteria, whether the change of custody will materially promote the best interest of the child to offset the inherently disruptive effect of the change, the current case presents a unique circumstance. Based on the record, I must conclude that it would be less disruptive to A.M.A. to transfer custody back to S.P. than it will be to leave her in the custody of V.T. and E.T. Indeed, the concern for disruption reflected in McLendon is nonexistent under the unique facts of this case. See Spears v. Wheeler, 877 So.2d 607, 610-11 (Ala.Civ.App.2003) (Murdock, J., dissenting). It is, so to speak, a legal principle without a home in the facts. Concomitantly, therefore, any promotion of A.M.A.’s interest is, by definition, material; that is, any promotion would more than offset the disruptive effect because there is no appreciable disruptive effect, or at least none remotely approaching the type of disruptive effect with which McLendon was concerned. See Smith v. Smith, 865 So.2d 1207, 1212 (Ala.Civ.App.2003) (Murdock, J., concurring in the result); see also Ex parte J.M.F., 730 So.2d 1190, 1194 (Ala.1998). In contrast, under the unusual facts of this case, the juvenile court could only have concluded that returning A.M.A. to S.P.’s custody would greatly promote A.M.A.’s interest.
BRYAN, J., concurs.

. In addition to the other concerns referenced in the main opinion and in this opinion, I note that V.T., who had indicated in W.T.M. Ill that she was "retired” and would care for A.M.A., returned to work shortly after the juvenile court entered the January 2003 and February 2003 orders.