Jami L. McLENDON

v.

John David MILLS, Jr.

2140389

Court of Civil Appeals of Alabama.

July 10, 2015.

Austin Burdick of Burdick Law Firm, Bessemer, for appellant.

Submitted on appellant's brief only.

THOMAS, Judge.

Jami L. McLendon ("the mother") appeals from a judgment of the Crenshaw Circuit Court that denied her petition to modify custody of three children ("the children") born of the mother's marriage to John David Mills, Jr. ("the father"). The parties' divorce judgment does not appear in the record; however, the circuit court confirmed that it had incorporated the parties' agreement and had entered a judgment divorcing the parties on March

1, 2012. There is no dispute that the circuit court had awarded the parties joint custody of the children. In May 2013, the mother filed a petition seeking a custody modification, alleging certain changes in circumstances. In June 2013, the mother filed a petition seeking an award of emergency custody of the children, asserting that she feared for the safety of one of the children when he was in the father's custody. The circuit court held an ore tenus proceeding on the mother's petitions on October 21, 2014. In its judgment, entered on January 3, 2015, the circuit court expressly concluded the mother was required to meet the custody-modification standard set forth in *Ex parte McLendon*, 455 So.2d 863 (Ala. 1984) ("the *McLendon* standard"), and it denied the mother's request for a modification of custody.

The mother filed a motion to alter, amend, or vacate the judgment in which she argued, among other things, that the circuit court had improperly applied the *McLendon* standard and that the proper standard was the best-interest standard set forth in *Ex parte Couch*, 521 So.2d 987, 989 (Ala. 1988). Despite the mother's argument, on February 4, 2015, the circuit court denied the mother's postjudgment motion, stating that it had applied the proper standard and that, "[f]urther[,] had the Court used the 'best interest' standard as argued by the Mother, there was still not enough evidence to warrant a change of full time custody to the Mother."

◼ On February 9, 2015, the mother filed a notice of appeal seeking this court's review of whether the circuit court erred by applying the *McLendon* standard and whether the mother should have been awarded custody of the children under the best-interest standard.

"Although a trial court's judgment that is based on that court's findings of fact in a child-custody-modification case will not be reversed absent a showing that the findings are plainly and palpably wrong, the ore tenus rule has no application to the mother's contention regarding the inapplicability of the *McLendon* standard because the question raised 'is not based on a finding of fact; rather it is one of law—whether the correct burden of proof was imposed by the trial court.' *Daniel v. Daniel*, 842 So.2d 20, 21 (Ala. Civ. App. 2002)."

◼ *Rehfeld v. Roth*, 885 So.2d 791, 794 (Ala. Civ. App. 2004). If neither parent has previously been given primary physical custody, then "the best interests of the child" standard applies. *See Ex parte Couch*, 521 So.2d at 989. Accordingly, the mother is correct that the proper standard in this case was the best-interest standard; however, because the circuit court expressly determined in its postjudgment order that it would not have changed custody under the correct burden of proof, we need not reverse the judgment. Although the circuit court erred by applying the *McLendon* standard, such error was harmless because of the circuit court's express conclusion as to the mother's right to relief if it had applied the best-interest standard in the February 4, 2015, order denying the mother's postjudgment motion and because the judgment is due to be affirmed under the less stringent best-interest standard. *See Rehfeld*, 885 So.2d at 795 (applying Rule 45, Ala. R. App. P., in a case in which the trial court applied the incorrect custody-modification standard).

◼ The testimony indicated that the parents do not communicate or cooperate with one another. The father said that he depended on the children's paternal grandmother ("the paternal grandmother") to communicate with the mother. The mother testified that she frequently sought the intervention of police officers for various "scenes" created during custody ex-

changes. The mother testified that the father "constantly" kept the children during her custodial weeks, a fact that the father did not dispute. The father testified: "If they don't want to go [to the mother], I didn't make them. If I come to her house and they didn't want to go with me, I didn't take them." The father said that, at times, the children did not want to go with the mother because they were afraid of V.F., the mother's fiancé, with whom she was cohabiting.[1] The mother admitted that V.F. had spanked the children's hands or "popped them with a fly flap" when the children had used profanity in his presence. The mother said that the father or the paternal grandmother had, at least twice, reported her to the Department of Human Resources ("DHR") on allegations that V.F. and the mother had physically abused the children. The father said that he had reported the mother because the children had had bruises on their legs that looked like belt marks; however, he admitted that DHR did not find evidence of physical abuse.

V.F. testified that he, the father, and the children's paternal grandfather had had "aggressive" or "heated" discussions about bruises on the children. V.F. and the father each described two physical altercations between one another. The father said that police had not been called to intervene in one physical altercation and that he had been found not guilty on a charge of domestic violence stemming from the other physical altercation with V.F.

Although the mother testified that the paternal grandmother, and not the father, cared for the children during the father's custodial periods, the mother testified that the father was a good father. The father agreed that the paternal grandmother helped him care for the children "substantially." The mother said that she provided the children's insurance coverage and that she or the paternal grandmother took the children to their medical and dental appointments. Both parties testified that the other party had failed to provide the children's medications at custody exchanges.

At the time of the hearing the children were, respectively, six, five, and four years of age. The father admitted that he did not contribute to the children's private-school tuition and that he wanted the children to attend public school. The mother testified that all the children had had excessive absences from school during the father's custodial weeks. The father denied that the children had had excessive absences, but, when presented with the 6-year-old's kindergarten report card, which was not offered into evidence, the father admitted that the school had recorded 25 absences within a 4-month period. The father said that he was not concerned about the absences, and the mother offered no proof that the absences had occurred during the father's custodial weeks other than her testimony that the six-year-old had repeated kindergarten because he had had so many absences from school and speech therapy during the father's custodial weeks. Finally, according to the mother, the father failed to transport the children to their baseball games or to properly clothe the children.

We conclude that the circuit court, as the trier of fact, had an evidentiary basis to deny the custody modification requested by the mother pursuant to the best-interest standard. *Means v. Means*, 512 So.2d 1386, 1388 (Ala. Civ. App. 1987). Even the strongest evidence presented in

1. The father said that a female (and her child) lived with him, but there was no indication whether the father was related to her.

the mother's favor is rather weak. Both the father and V.F. appear to have violent tendencies; however, there was no proof that either had ever harmed the children. The mother's allegations regarding the school attendance of kindergarten-aged and preschool-aged children is not compelling. The other evidence presented regarding the parties' lack of communication and cooperation indicated that a change of custody might benefit the mother, but the mother failed to demonstrate that a change of custody would serve the best interest of the children. The touchstone for custody decisions "is the welfare and best interests of the child." *Willing v. Willing*, 655 So.2d 1064, 1065 (Ala. Civ. App. 1995). The circuit court's judgment is supported by the evidence and is not plainly or palpably wrong when reviewed pursuant to the best-interest standard. Therefore, we affirm the circuit court's judgment denying the mother's custody-modification request.

AFFIRMED.

PITTMAN, MOORE, and DONALSON, JJ., concur.

THOMPSON, P.J., dissents, with writing.

THOMPSON, Presiding Judge, dissenting.

Because I believe our caselaw prohibits us from applying the harmless-error rule to the specific circumstances of this case, I must respectfully dissent.

It is well settled that a trial court will use one of two standards in custody-modification proceedings: the more stringent standard set forth in *Ex parte McLendon*, 455 So.2d 863 (Ala. 1984) ("the *McLendon* standard"), and the less stringent standard set forth in *Ex parte Couch*, 521 So.2d 987 (Ala. 1988) ("the best-interests standard"). Typically, a trial court's application of the incorrect standard requires reversal of that trial court's judgment and remand of

the cause for application of the proper standard. *Spears v. Wheeler*, 877 So.2d 607, 608 (Ala. Civ. App. 2003).

However, in *Rehfeld v. Roth*, 885 So.2d 791 (Ala. Civ. App. 2004), this court discussed the applicability of the harmless-error rule to an appeal from a custody-modification judgment when a trial court has applied the incorrect standard to those proceedings.

"In appeals from a judgment *denying* a custody petition where the [best-interests] standard was applied, but where the *McLendon* standard should have been applied, and in appeals from a judgment granting a custody petition where the *McLendon* standard was applied, but where the [best-interests] standard should have been applied, we have affirmed the judgments under review, concluding that the trial courts' errors were harmless. *See Lawley v. Byrd*, 689 So.2d 191 (Ala. Civ. App. 1997); and *I.M. v. J.P.F.*, 668 So.2d 843 (Ala. Civ. App. 1995). However, where trial courts have denied custody petitions after applying the more stringent *McLendon* standard where the less stringent [best-interests] standard should have been applied, we have reversed those judgments and remanded the cases for those trial courts to apply the [best-interests] standard. *See Davis v. Davis*, 753 So.2d 513, 514 (Ala. Civ. App. 1999). Thus, as noted in the main opinion in *Ex parte W.T.M.*, 851 So.2d 55 (Ala. Civ. App. 2002), 'when the trial court uses an improper, higher standard to deny relief to a party requesting a modification of a prior custody order, the appellate court will not review the evidence under the correct lower standard and direct the award of custody,' but will reverse the judgment and remand the cause 'for the trial court to make a custody determination, applying

the correct standard.' 851 So.2d at 57–58."

*Rehfeld,* 885 So.2d at 794–95.

Thus, under *Rehfeld,* when a trial court denies a custody-modification petition by applying the less stringent best-interests standard, though it should have applied the more stringent *McLendon* standard, this court may affirm that judgment if it determines that the error was harmless. The obvious rationale behind that holding is that if the petitioner was unable to meet the less stringent of the two standards, it is reasonable to believe he or she also would have been unable to meet the more stringent standard. *See Lawley v. Byrd,* 689 So.2d 191, 193 (Ala. Civ. App. 1997). Likewise, when a trial court grants a custody-modification petition by applying the *McLendon* standard, though it should have applied the best-interests standard, this court may also affirm that judgment on the basis of harmless error. Again, the rationale is that if the petitioner was successful in meeting the more stringent of the two standards, despite not being required to do so, it stands to reason that he or she also would have met the less stringent standard. *See I.M. v. J.P.F.,* 668 So.2d 843, 845 (Ala. Civ. App. 1995).

However, as the main opinion correctly points out, this case presents a situation in which the trial court should have applied the less stringent best-interests standard but, instead, denied the custody-modification petition of Jami L. McLendon ("the mother") because she did not meet the more stringent *McLendon* standard. Unlike the two examples discussed above, we cannot make the assumption that because the mother was unable to meet the more stringent of the two standards, she necessarily would have been unable to meet the less stringent standard. Thus, because the trial court improperly applied the more stringent standard under *McLendon, Reh-*

*feld* requires that we reverse the judgment and remand the cause to the trial court for application of the correct standard. *Rehfeld,* 885 So.2d at 796 ("Our conclusion that the trial court improperly applied. *McLendon*'s heavier burden in a custody-modification proceeding where [the best-interests standard] supplied the proper burden of proof necessitates our reversal of the trial court's judgment and our remand of the cause ...."). Thus, I cannot concur with the main opinion's application of the harmless-error rule to the circumstances of this appeal.

I am unpersuaded by the trial court's statement in response to the mother's postjudgment motion that it would have reached the same conclusion even if it had applied the correct standard, and our case-law does not allow us to review the evidence under the best-interests standard when the trial court's judgment clearly states that it applied the *McLendon* standard.

" '[W]hen the trial court uses an improper, higher standard to deny relief to a party requesting a modification of a prior custody order, the appellate court will not review the evidence under the correct lower standard and direct the award of custody,' but will reverse the judgment and remand the cause 'for the trial court to make a custody determination, applying the correct standard.' [*Ex parte W.T.M.,*] 851 So.2d [55,] 57–58 [ (Ala. Civ. App. 2002) ]."

*Id.* at 795.

Because I believe the use of the harmless-error rule as set forth in *Rehfeld* is inapplicable to the specific circumstances of this case, I would not, as the main opinion does, engage in an analysis of the evidence under the light of the best-interests standard; rather, I would reverse the trial court's judgment and remand the

cause for that court to apply the proper standard.